1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   KENNETH J. BLACK (291871)
3  SNEHEE KHANDESHI (342654)
   Post Montgomery Center
4  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
5  Telephone:  415/288-4545
   415/288-4534 (fax)
6  shawnw@rgrdlaw.com
   kennyb@rgrdlaw.com
7  skhandeshi@rgrdlaw.com

8  Lead Counsel for Lead Plaintiff

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11 PIOTR JASZCZYSZYN, Individually and on  )  Case No. 4:22-cv-00956-HSG
   Behalf of All Others Similarly Situated,  )
12                                          )  CLASS ACTION
                            Plaintiff,      )
13                                          )  LEAD PLAINTIFF'S OPPOSITION TO
          vs.                               )  DEFENDANTS' MOTION TO DISMISS
14                                          )  AMENDED CLASS ACTION COMPLAINT
   SUNPOWER CORPORATION, et al.,            )  FOR VIOLATION OF SECURITIES LAWS
15                                          )
                            Defendants.     )  DATE:    June 22, 2023
16 _____ )  TIME:    2:00 p.m.
                                               DEPT:    Courtroom 2, 4th Floor
17                                             JUDGE:   Hon. Haywood S. Gilliam, Jr.

18

19

20

21

22

23

24

25

26

27

28

4882-0832-3421.v1

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   SUMMARY OF THE COMPLAINT.....................................................................3

III.  STANDARD OF REVIEW .....................................................................................6

IV.   ARGUMENT...........................................................................................................7

      A.    The Complaint Adequately Alleges the Falsity of Defendants' August 3-4,
            2022 and November 3-4, 2022 Statements.................................................7

            1.    Defendants' Statements Concerning the Performance of
                  SunPower's Commercial Business and the Related, Current Status
                  of SunPower's Progress in Meeting FY21 Financial Guidance
                  Were Materially False and Misleading...........................................8

            2.    Defendants' Statements Concerning the Risk SunPower Might
                  Experience Defects or Other Quality Issues in Its Products or
                  Product Components Were Materially False and Misleading ..................13

      B.    The Allegations in the Complaint Raise a Strong Inference of Scienter ...............17

            1.    Defendants' Contemporaneous Knowledge of or Access to
                  Material Information Concerning the Risk of Cracking in
                  SunPower's Commercial Solar Systems Is Sufficient to Plead a
                  Strong Inference of Scienter .......................................................18

            2.    The Core Operations Doctrine, in Combination with Allegations
                  Concerning Defendants' Access and Attention to Information
                  About the Company's Second-Largest Business Segment, Bolsters
                  the Inference of Scienter ...........................................................20

            3.    The Temporal Proximity of Defendants' False Statements and
                  Corrective Disclosures, and the Scope of the Cracked Connectors,
                  Bolster a Strong Inference of Scienter ........................................21

            4.    Holistically Considered, Plaintiff's Allegations of Scienter Are
                  Reasonable, Strong, and More Compelling than Any Opposing
                  Inference .....................................................................................24

      C.    Control Person Liability Is Alleged as to Defendants SunPower, Faricy,
            and Sial.....................................................................................................25

V.    CONCLUSION......................................................................................................25

1

# TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) (*en banc*)......................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007)..........................................................................................20

*Bielousov v. GoPro, Inc.*,
2017 WL 3168522 (N.D. Cal. July 26, 2017)..................................................11, 13

*Bondali v. Yum! Brands, Inc.*,
620 F. App'x 483 (6th Cir. 2015)................................................................15

*Chabot v. Walgreens Boots All., Inc.*,
2023 WL 2908827 (M.D. Pa. Mar. 31, 2023)..................................................11, 25

*Coble v. Broadvision Inc.*,
2002 WL 31093589 (N.D. Cal. Sept. 11, 2002) ................................................17

*Doyun Kim v. Advanced Micro Devices, Inc.*,
2019 WL 2232545 (N.D. Cal. May 23, 2019) ..............................................15, 16

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) .........................................................................21, 22

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016) ......................................................24

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*
63 F.4th 747 (9th Cir. 2023) ............................................................................ *passim*

*Hatamian v. Advanced Micro Devices, Inc.*,
87 F. Supp. 3d 1149 (N.D. Cal. 2015) .......................................8, 13, 19, 23

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021), *cert. denied sub nom.*
*Alphabet Inc. v. Rhode Island*, _U.S._, 142 S. Ct. 1227 (2022) ..............8, 14, 15, 18

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ......................................................10

*In re Apple Inc. Sec. Litig.*,
2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ..............................................18, 21, 24

1

2                                                                                    **Page**

3

*In re FBR Inc. Sec. Litig.*,
4      544 F. Supp. 2d 346 (S.D.N.Y. 2008)......................................................................15

5  *In re Foundry Networks, Inc.*,
6      2002 WL 32354617 (N.D. Cal. June 6, 2002) (unpublished)................................15

7  *In re Iso Ray, Inc. Sec. Litig*,
       189 F. Supp. 3d 1057 (E.D. Wash. 2016) .............................................................20
8
   *In re LDK Solar Sec. Litig.*,
9      2008 WL 4369987 (N.D. Cal. Sept. 24, 2008) ...............................................10, 17

10 *In re NVIDIA Corp. Sec. Litig.*,
11     768 F.3d 1046 (9th Cir. 2014) ..............................................................................7

12 *In re Oracle Corp. Sec. Litig.*,
       627 F.3d 376 (9th Cir. 2010) ................................................................................18
13
   *In re Pivotal Sec. Litig.*,
14     2020 WL 4193384 (N.D. Cal. July 21, 2020)................................................15, 16

15 *In re Quality Sys., Inc. Sec. Litig.*,
16     865 F.3d 1130 (9th Cir. 2017) ...................................................................... *passim*

17 *In re Secure Computing Corp. Sec. Litig.*,
       184 F. Supp. 2d 980 (N.D. Cal. 2001) ..................................................................13
18
   *In re VeriFone Holdings, Inc. Sec. Litig.*,
19     704 F.3d 694 (9th Cir. 2012) ................................................................................24

20 *In re Zillow Grp., Inc. Sec. Litig.*,
21     2019 WL 1755293 (W.D. Wash. Apr. 19, 2019).................................................16

22 *Khoja v. Orexigen Therapeutics, Inc.*,
       899 F.3d 988 (9th Cir. 2018) .................................................................................7
23
   *Lamartina v. VMware, Inc.*,
24     2023 WL 2763541 (N.D. Cal. Mar. 31, 2023)......................................................17

25 *Lemen v. Redwire Corp.*,
26     2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) .....................................................25

27 *Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
       513 F.3d 702 (7th Cir. 2008) ................................................................................25

28

1

2                                                                                           **Page**

3

*Matrixx Initiatives, Inc. v. Siracusano,*
   563 U.S. 27 (2011) ................................................................................................7, 8, 14

*Meyer v. Jinkosolar Holdings Co.,*
   761 F.3d 245 (2d Cir. 2014) ........................................................................................14

*Miller v. Thane Int'l, Inc.,*
   519 F.3d 879 (9th Cir. 2008) .........................................................................................8

*Mulligan v. Impax Laboratories, Inc.,*
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ..........................................................................13

*Murphy v. Precision Castparts Corp.,*
   2017 WL 3084274 (D. Or. June 27, 2017) ..................................................................13

*N.M. State Inv. Council v. Ernst & Young LLP,*
   641 F.3d 1089 (9th Cir. 2011) .......................................................................................3

*No. 84 Emp. Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.,*
   320 F.3d 926 (9th Cir. 2003) ..................................................................................24, 25

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.,*
   380 F.3d 1226 (9th Cir. 2004) .....................................................................................24

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.,*
   367 F. Supp. 3d 16 (S.D.N.Y. 2019)............................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
   575 U.S. 175 (2015)......................................................................................................11

*Pierrelouis v Gogo, Inc.,*
   2021 WL 1608342 (N.D. Ill. Apr. 26, 2021) .................................................................8

*Rabkin v. Lion Biotechnologies, Inc.,*
   2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ..........................................................14, 25

*Reese v. Malone,*
   747 F.3d 557, 568 (9th Cir. 2014), *overruled on other grounds by*
   *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
   856 F.3d 605 (9th Cir. 2017) ................................................................................ *passim*

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.,*
   845 F.3d 1268 (9th Cir. 2017) .......................................................................................7

Page

*Richard R. Weston v. DocuSign, Inc.*
   2023 WL 3000583 (N.D. Cal. Apr. 18, 2023) ............................................................... *passim*

*Rihn v. Acadia Pharms. Inc.*,
   2016 WL 5076147 (S.D. Cal. Sept. 19, 2016)...............................................................13, 21

*Roberti v. OSI Sys., Inc.*,
   2015 WL 1985562 (C.D. Cal. Feb. 27, 2015).......................................................................21

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .............................................................................19, 20, 21

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................................24

*Siracusano v. Matrixx Initiatives, Inc.*,
   585 F.3d 1167 (9th Cir. 2009)
   *aff'd Matrixx*, 563 U.S. 27 (2011)...............................................................14, 16, 24

*Tellabs v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)........................................................................17, 18, 24

*United States v. Anderson*,
   472 F.3d 662 (9th Cir. 2006) ...............................................................................10

*Voulgaris v. Array Biopharma Inc.*,
   2020 WL 8367829 (D. Colo. Nov. 24, 2020) .....................................................................8

*Warshaw v. Xoma Corp.*,
   74 F.3d 955 (9th Cir. 1996) ..............................................................................12

*Washtenaw Cnty. Emps.Ret. Sys. v. Celera Corp.*,
   2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) ...........................................................17

*Zamani v. Carnes*,
   491 F.3d 990 (9th Cir. 2007) ..............................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b)....................................................................................................6, 7
   §78u-4(b)(1)(B)...........................................................................................7
   §78u-4(b)(2)(A) ...........................................................................................17
   §78u-4(b)(3)(B)...........................................................................................20

1

2                                                                                          **Page**

3

Federal Rules of Civil Procedure
    Rule 9(b) ...................................................................................................................7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lead Plaintiff Steamfitters Local 449 Pension & Retirement Security Funds ("Plaintiff") submits this opposition to Defendants'[1] Motion to Dismiss Amended Class Action Complaint for Violation of Securities Laws (ECF 63) ("Motion" or "Mot.").

## I.       INTRODUCTION

SunPower used to sell commercial solar energy systems.  Indeed, it was the market share leader.  But in 2021, Defendants decided to sell off SunPower's commercial business.  This concerned investors, but Defendants reassured them SunPower was selling a healthy business to focus on even better opportunities.  But then, on January 20, 2022, Defendants revealed the truth: "cracking" – a fire hazard – had developed in the connectors (a key component) in SunPower's commercial systems.  In fact, cracking "developed over time" in "nearly all" of the Company's commercial systems "since 2019."  And it caused the Company to miss its financial guidance to account for $31 million in charges necessary to recall and replace all its connectors.  SunPower's stock price plummeted by 17% on the news.  Within weeks, Defendants sold the "heavy" portion of the commercial business to SunPower's majority owner, and abandoned the "light" portion, which cost them another $15 million.  SunPower no longer has a commercial business.

Based on these undisputed facts, Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 55) ("Complaint") pleads a straightforward theory of fraud: between August 3, 2021, and January 20, 2022 ("Class Period"), Defendants made statements that concealed a pervasive and potentially lethal product defect.

Two recent cases confirm the viability of such a theory.  *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, featured alleged statements omitting problems in defendant's sales pipeline, as well as the risk that a "merger might not ensue."  63 F.4th 747 (9th Cir. 2023) ("*Forescout*").  As the Ninth Circuit explained, even mixed statements – *i.e.* that contain parts that are opinion, puffery, or forward looking – or statements that were accompanied by, or were themselves, risk warnings, nevertheless are actionable as omissions of present fact.  *Id.*  And in

---

[1]    Defendants are SunPower Corporation ("SunPower" or the "Company"); its CEO, President, and Chairman, Peter Faricy ("Faricy"); and its former CFO and Executive Vice President, Manavendra S. Sial ("Sial").

*Weston v. DocuSign, Inc.*, Judge Orrick held it was sufficient to plead that "by the start of the class period," defendants were aware that "some" customers were not renewing subscriptions as the COVID-19 pandemic receded; it was not relevant precisely when that risk materialized or when it did so in full.  2023 WL 3000583, at *17 (N.D. Cal. Apr. 18, 2023) ("*DocuSign*").

The statements here are substantially similar.[2]  For example, on August 3, 2021, Sial told investors "I think" the commercial business had significantly improved, but also specified objective ways in which it had, *i.e.*: "from a top line [*i.e.*, revenue] perspective as well as a margin point of view."  ¶40.[3]  As in *Forescout*, this "mixed" statement of opinion and verifiable fact is actionable because it omitted the development of cracked connectors, and related risk to the SunPower's finances.  And on November 3, 2021, in discussing the commercial business, Faricy told investors: "we have found our footing.  With a streamlined company and our healthiest balance sheet in years, we are now going on offense to grow our business . . . ."  ¶59.  This statement too omitted the cracked connector problem.  Defendants also filed two Forms 10-Q during the Class Period (on August 4, 2021 and November 4, 2021) purporting to warn that SunPower's business "may" or "could" be harmed "if" product defects arose.  ¶¶11, 14, 44-46, 62-64.  For example, Defendants warned: "***potential future*** product or component failures ***could*** cause us to incur substantial expense to repair or replace defective products or components."  ¶¶46, 64.  As in both *Forescout* and *DocuSign*, these statements spoke of "as-yet-unrealized risks" but did not alert the reader that some of these risks may have already materialized.

The facts here are also substantially similar.  In *DocuSign*, the risk of customers not renewing, or renewing for shorter contracts, had already developed, in part, by the start of the class period.  Here, the Complaint alleges the risk of cracked connectors and related risks to the Company's finances, had also already developed by the start of the Class Period.  Indeed, the facts

---

[2]   Exhibit A to the Motion (ECF 65-1), has not faithfully reproduced the alleged false statements and should not be relied upon.  For example, Plaintiff has not alleged Statement No. 3, SunPower's guidance, in Exhibit A to be actionable.  *See* ¶39.  Defendants' erroneous inclusion of the guidance is apparently done to mischaracterize the alleged statements as forward looking and should be rejected.  *See infra* at 13.

[3]   All "¶_" and "¶¶_" references are to the Complaint.

here are stronger.  "[N]early all" connectors "since 2019" developed cracking, compared to just some of *DocuSign* customers not renewing or renewing for shorter periods.  Accepting these "'allegations as true and constru[ing] them in the light most favorable to plaintiff,'" the Complaint pleads violations of the securities laws.  *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011).[4]

Defendants do not meaningfully address these allegations.  The Motion does not dispute that the cracking problem (or Defendants' knowledge thereof) developed in nearly all SunPower's commercial systems "since 2019."  Indeed, it does not mention the year 2019 at all and does not provide any plausible interpretation of the facts that would place development of the cracking after the allegedly false and misleading statements.

Unable to dispute these key factual allegations, the Motion mischaracterizes the alleged statements and controlling authority.  In doing so, it makes the same arguments rejected in *Forescout* and *DocuSign*.  The thrust of Defendants' Motion is that the alleged statements are not statements or omissions of present fact.  The Motion seizes on isolated snippets, devoid of context, to mischaracterize the statements as opinion, puffery, or forward looking.  But the statements are, at best for Defendants, "mixed" statements of present fact, and the material information each omitted was of present fact.  The Motion also mischaracterizes relevant authorities.  For example, the Motion argues Plaintiff must plead Defendants "knew about the ***extent*** of the cracking issue, its ***cause*** and ***scope***" to plead both falsity and scienter.  *E.g.*, Mot. at 17, 21.  However, Defendants cite out-of-circuit authority rejected by the Ninth Circuit while mis-citing other authority.  Further, Defendants' standard is obviously wrong; no executive would ever investigate the cause or extent of a problem if he or she could avoid liability by not doing so.  The Court should deny the Motion.

## II.    SUMMARY OF THE COMPLAINT

SunPower is a solar energy company that provides solar generation, storage and other solutions to its customers.  ¶¶4-5.  In 2021, SunPower had a commercial business that was then critical both to the Company's revenue and brand.  SunPower divided its commercial business

---

[4]    Emphasis is added and citations are omitted throughout unless otherwise indicated.

1  between two segments: (i) the Commercial and Industrial Solutions segment ("CIS" or "C&I,"

2  also referred to as "heavy") sold products to larger commercial clients; and (ii) the "Light

3  Commercial Value-Added Reseller" ("CVAR") business, a sub-segment of the Company's

4  residential segment, sold products to smaller clients.  ¶6.  In combination, the two segments

5  contributed over 23% of SunPower's revenues.  *Id.*  SunPower's commercial businesses were also

6  considered a key point of differentiation for SunPower in the solar generation market.  ¶7.  The

7  warranties SunPower provided for the third-party products and components used in its solar

8  systems were also considered to be a unique feature distinguishing the Company from its

9  competitors.  *Id.*  Sial described the CIS segment as "a point of strength because we're the market

10  share leader."  ¶52.

11      In April 2021, SunPower hired Faricy as CEO with a mandate to review and restructure

12  the business.  Faricy told investors that his focus "over the next 100 days" was conducting a "deep

13  [dive]" of the residential, commercial and industrial businesses.  ¶8.

14      The Class Period starts on August 3, 2021, when Defendants announced the Company's

15  2Q21 financial results.[5]  In doing so, Defendants made three alleged false statements.  First, an

16  August 3, 2021 press release quoted Faricy as stating: "'***Our solid second quarter results reflect***

17  ***continued execution in both our residential and commercial businesses***'" ("Continued Execution

18  Statement"), and "'***we remain on track to achieve our 2021 financial outlook and are well***

19  ***positioned to drive growth and profitability in 2022 and beyond***'" ("On Track Statement").  ¶39.

20  Faricy and Sial also hosted an earnings call, during which Sial reassured investors the CIS segment

21  had significantly improved.  Though Sial started his response with "I think," he then specified

22  objectively measurable ways in which the commercial business had performed:

23          *I think the business is significantly better year-on-year, both from a top line*
           *perspective as well as a margin point of view.  And then more importantly, we*
24          *expect the CIS business to be profitable in the back half of the year, which you*
           *recall is a significant turnaround from the last couple of years*.
25
26  ¶40 ("Revenue and Margin Statement").

27  ───────────────

28  [5]    All fiscal periods are identified as in the Complaint.  ¶3 n.1.

1   At the time, Defendants knew their plans for the commercial business were foremost on

2   investors' minds.  During the August 3, 2021 call, for example, an analyst asked: "In response to

3   an earlier question, you talked about a long-term opportunity perhaps associated with the large

4   commercial business.  I was wondering if you could maybe dig into more detail on the investment

5   thesis associated with maintaining, with keeping this business in the SunPower family." ¶41.[6]

6   On August 4, 2021, SunPower filed its Form 10-Q for 2Q21.  That report stated risk

7   warnings purporting to caution investors that product defects **may** occur or harm SunPower's

8   business, such as "***potential future*** product or component failures ***could*** cause us to incur

9   substantial expense to repair or replace defective products or components" ("August Risk Warning

10  Statements").  ¶¶44-46; *see also* ¶11.

11  Then, on October 5, 2021, after having reassured investors of the CIS segment's

12  performance, Defendants held an unscheduled investor call to announce a new acquisition, but

13  also to surprise investors with news that they were cutting financial guidance due to poor

14  performance in the CIS segment and looking to sell the CIS business "by the end of the calendar

15  year." ¶52.

16  On November 3, 2021, Defendants hosted SunPower's 3Q21 earnings call.  The Complaint

17  alleges Faricy falsely reassured investors and omitted information, stating:

18          Over the past few years, you've been with us through several major
        restructuring events and strategic changes.  I'm pleased to report we have found our
19      footing.  ***With a streamlined company and our healthiest balance sheet in years,***
        ***we are now going on offense*** to grow our business across a vast, mostly untapped
20      residential TAM.

21  ¶59 ("Streamlined Company, Healthiest Balance Sheet Statement").

22  The next day, SunPower filed its quarterly report on Form 10-Q for 3Q21.  That quarterly

23  report repeated the same false and misleading August Risk Warning Statements ("November Risk

24  Warning Statements").  ¶¶62-64; *see also* ¶14.

25

26

27  [6]   Sial ducked the question, responding that the CIS business was "a really attractive business"
    that would "still probably have some lumpy period" in generating revenues.  ¶41.

28

1    Just one month later, SunPower published its first update in over a year to its Safety and

2    Installation Instructions manual.  ¶69.  In it, SunPower newly warned cracking might occur in

3    connectors.  *Id.*  A month later, Defendants preannounced an earnings miss fueled by millions of

4    dollars in costs to replace connectors that had developed the same "cracking issue."  ¶¶71-73.

5    Throughout the Class Period, the Company's stock price traded at artificially inflated prices

6    as high as $34.61 per share.  ¶85.

7    Then, on January 20, 2022, Defendants issued a press release announcing SunPower was

8    ***taking $31 million in charges*** to replace connectors experiencing "cracking" problems across its

9    commercial businesses.  ¶71.  The release also disclosed that, as a result, SunPower would miss

10   its financial guidance for 4Q21.  *Id.*  The release also conceded that the defects were not new but

11   had "developed ***over time***" across both the CVAR and CIS commercial segments and that

12   SunPower had hired a new executive to oversee the Company's supply chain.  *Id.*

13   Financial analysts put these revelations into their proper context.  Roth Capital Partners

14   reported SunPower had to replace connectors and/or retrofit sites in "nearly all C&I systems since

15   2019," which it estimated to concern "~1,000+ sites representing close to ~9MW."  ¶75.  Truist

16   Securities and Cowen Equity Research analysts reasoned that the cracking defect must have been

17   discovered pursuant to SunPower's due diligence review of the CIS segment for sale.  ¶¶72-73.

18   Following these disclosures, SunPower's stock price declined from a close of $19.02 per

19   share on January 20, 2022, to $15.80 per share on January 21, 2022, a 16.9% drop, on more than

20   11.4 million shares trading volume, as compared to only 2.8 million shares traded on January 20,

21   2022.  ¶76.

22   Further disclosures soon followed, in particular SunPower's February 16, 2022 disclosure

23   that it would also "exit the light commercial business" at the cost of another $15 million to the

24   Company (¶79), and its August 31, 2022 disclosure that Sial was leaving the Company (¶81).

25   **III.    STANDARD OF REVIEW**

26   To state a claim under §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), a

27   plaintiff must plead: "'(1) a material misrepresentation or omission by the defendant; (2) scienter;

28   (3) a connection between the misrepresentation or omission and the purchase or sale of a security;

1    (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"

2    *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).  By specifically alleging the

3    "'who, what, when, where, and how' of the fraud," Plaintiff's claims meet the heightened pleading

4    requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform

5    Act of 1995 ("PSLRA").  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir.

6    2018).  While the same facts may support "both an inference of scienter and an inference of falsity

7    . . . '[f]alsity is subject to a particularly requirement and the *reasonable inference* of plausibility

8    set out in *Twombly* and *Iqbal*, and scienter is subject to a particularly requirement and a *strong*

9    *inference* standard of plausibility.'"  *DocuSign*, 2023 WL 3000583, at *17 (emphasis in original)

10   (quoting *Forescout*, 63 F.4th at 766).  When ruling on a motion to dismiss a §10(b) action of the

11   Exchange Act, 15 U.S.C. §78j(b), courts must "'take all allegations of material fact as true and

12   construe them in the light most favorable to the nonmoving party.'"  *In re Quality Sys., Inc. Sec.*

13   *Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

14   **IV.    ARGUMENT**

15        **A.    The Complaint Adequately Alleges the Falsity of Defendants'
                August 3-4, 2022 and November 3-4, 2022 Statements**

16        The Complaint adequately pleads falsity under the PSLRA as it "'specif[ies] each

17   statement alleged to have been misleading, [and] the reason or reasons why the statement is

18   misleading,' and, if an allegation regarding the statement or omission is made on information and

19   belief, the complaint . . . 'state[s] with particularity all facts on which that belief is formed.'"  15

20   U.S.C. §78u-4(b)(1)(B); *Reese v. Malone*, 747 F.3d 557, 568 (9th Cir. 2014), *overruled on other*

21   *grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d

22   605 (9th Cir. 2017).

23        A statement is misleading if it would give a reasonable investor an "'"impression of a state

24   of affairs that differs in a material way from the one that actually exists."'"  *Retail Wholesale &*

25   *Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co*., 845 F.3d 1268, 1275 (9th Cir.

26   2017).  Even if a statement is not false, it may be misleading if it omits material information.  *See*

27   *Khoja*, 899 F.3d at 1008-09 (citing *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir.

28

2014)).  An omission is material "when there is '"a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available."'"  *Matrixx*, 563 U.S. at 38.  Statements that are "literally true" may be still be misleading due to '"their context and manner of presentation."'  *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).

> **1.** **Defendants' Statements Concerning the Performance of SunPower's Commercial Business and the Related, Current Status of SunPower's Progress in Meeting FY21 Financial Guidance Were Materially False and Misleading**

Plaintiff alleges four statements concerning the current performance of SunPower's commercial business and, relatedly, SunPower's current status in meeting guidance are false and misleading because each concealed dangerous product defects and the risk of related costs.

There is no special test for determining the falsity of an alleged misstatement of past or present fact.  Courts "apply the objective standard of a 'reasonable investor' to determine whether a statement is misleading."  *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, _U.S._, 142 S. Ct. 1227 (2022).  Under that standard, even statements "such as 'tracking very well' or 'very large pipeline'" may nevertheless, in context, "'provid[e] a [sufficiently] concrete description" that they "cannot be discounted as mere 'puffery.'"  *Forescout*, 63 F.4th at 770, 771.  Nor can "a defendant [] transform non-forward-looking statements into forward-looking statements that are protected by the safe harbor provisions of the PSLRA by combining . . . statements about past or current facts with forward-looking statements about projected revenues and earnings."  *Quality Sys.*, 865 F.3d at 1141.

For statements or omissions of past or present fact, allegations that contradictory facts existed at the time of the statements are sufficient to satisfy the heightened pleading requirements of the PSLRA.  A plaintiff does not need to plead the precise time at which those contradictory facts came into existence.  *See Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1154 (N.D. Cal. 2015) (contrary information "persisted"); *Reese*, 747 F.3d at 575 ("relatively

constant, long-term nature of the [contrary] information").[7]   In *Berson v. Applied Signal Tech., Inc.*, for example, the Ninth Circuit credited allegations that stop-work orders were "***likely*** still in effect."  527 F.3d 982, 985 n.1 (9th Cir. 2008).

Here, Defendants falsely misrepresented or omitted the prior existing, material facts that connectors across their commercial business had developed the "cracking" problem.  On August 3, 2021, in SunPower's 2Q21 press release, Faricy misleadingly claimed: "Our solid second quarter results reflect continued execution in . . . our . . . commercial businesses,'" and "'we remain on track to achieve our 2021 financial outlook and are well positioned to drive growth and profitability in 2022 and beyond.'"  ¶39.  During an earnings call later that day, Sial falsely claimed the commercial business had improved in two specific ways: "I think the business is significantly better year-on-year, both from a ***top line*** perspective as well as a ***margin*** point of view."  ¶40.[8]

By November 3, 2021, Defendants had already announced their intention to sell the heavy commercial business.  During the 3Q21 earnings call that day, Faricy gave investors the false impression that after "several major restructuring events and strategic changes," SunPower's operations and finances were no longer handicapped by the commercial business: "I'm pleased to report we have found our footing.  With a streamlined company and our healthiest balance sheet in years, we are now going on offense to grow our business . . . ."  ¶59.

In truth, "nearly all" of SunPower's commercial solar systems "since 2019" were at risk from defective connectors that could experience cracking and cause fires and that would require SunPower to incur tens of millions of dollars in recall and replacement charges.  *See* ¶¶71-75.  Thus, as of August 3, 2021, it was misleading to claim the revenue (*i.e.*, "top line") and margins generated by SunPower's commercial business had improved and SunPower was "on track" to

---

[7]   Out-of-district authority is in accord. *See Voulgaris v. Array Biopharma Inc.*, 2020 WL 8367829, at *16 (D. Colo. Nov. 24, 2020) (plaintiff need not "'"identify the precise moment"'" contradictory facts occurred prior or "during the putative [c]lass [p]eriod,"); *Pierrelouis v Gogo, Inc.*, 2021 WL 1608342, at*9 (N.D. Ill. Apr. 26, 2021) (same).

[8]   That Revenue and Margin Statement also included Sial's further representation that the commercial business was expected to be profitable in the "back half" of the fiscal year, which started July 5, 2021, prior to the August 3, 2021 call.  ¶40 ("[W]e expect the CIS business to be profitable in the back half of the year, which you recall is a significant turnaround . . . .").

meet fiscal year guidance.  Defendants' false reassurances that revenue and margin had improved parallel those in *Quality Sys.*, where Defendants' "reassur[ances] . . . that the pipeline was full and growing . . . 'affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed].'" 865 F.3d at 1144.  At best, Defendants' claim that solid results reflected continued execution in the commercial business omitted material facts, *i.e.*, the widespread connector component defects that would require millions of dollars to fix.  *See Forescout*, 63 F.4th at 771 ("These concrete assurances did not 'fairly align[] with the information in [defendants'] possession at the time'").

The November 3, 2021 Streamlined Company, Healthiest Balance Sheet Statement was false for the same reason.  Further, on October 5, 2021, Defendants lowered guidance for 4Q21 due to poor performance in the CIS segment.  ¶52.  This fact suggests Defendants knew something was wrong in the commercial segment by October 5, 2021, before the November 3, 2021 statement.  Nor did Defendants decide overnight to divest the CIS segment and abandon the CVAR segment, the latter at the cost of another $15 million.  *See* ¶¶71, 89.  The temporal proximity of these facts support falsity, as well as scienter.  *See infra* §IV.B.3.

The Motion does not seriously dispute that these statements were false and misleading when made.  *E.g.*, Mot. at 9 (arguing "subjective assessments" are "not actionable as a matter of law").  Instead, it mischaracterizes the statements as: (i) opinions; (ii) irrelevant topics, such as "TAM"; (iii) puffery; and/or (iv) forward looking.  In fact, at best, for Defendants, the statements are "mixed."  And, "[i]n the case of 'mixed' statements, the forward-looking portion of the statement" – or the opinion or vague portion of the statement – "is protected, but the representations of current or past fact are not."  *See In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *12 (N.D. Cal. June 2, 2020) (quoting *Quality Sys.*, 865 F.3d at 1150).

First, the Motion contends that "many" of the statements are opinion.[9]  This is wrong, and also ignores that omissions of present fact can make even "opinions that would otherwise not be

---

[9] However, the Motion identifies only one statement. Mot. at 14.  Defendants have waived the argument as to the other three statements (none of which is opinion, in any event).  *See In re LDK*

actionable" false statements of fact.  *DocuSign*, 2023 WL 3000583, at *18.  The one statement Defendants do label opinion – *i.e.*, "I think the business is significantly better year-on-year, both from a top line perspective as well as a margin point of view" (¶40) – is not pure opinion because the "top line" and "margin" portions of it are objective statements of present fact.  Prefacing those two misleading claims with "I think" does not make them nonactionable.  As the Ninth Circuit recently explained: "phrases such as '[w]e look forward to' and '[w]e currently expect' might render the statements opinions rather than assertions of concrete fact, but it does not follow that the statements do not create an affirmative [false] impression." *Forescout*, 63 F.4th 747;[10] *see also Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *5 (N.D. Cal. July 26, 2017) ("'***We believe*** we're still on track'" actionable).  To escape liability, Defendants must show the alleged statements are "pure" opinion statements.  *Chabot*, 2023 WL 2908827, at *12 ("[B]ecause only ***pure*** opinion statements are protected, an opinion suggesting facts about the basis for the speaker's opinion may be actionable 'if the real facts are otherwise, but not provided.'") (Emphasis in original) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188 (2015)).  Defendants do not contend, let alone establish, that any of the statements are pure opinion.

Second, Defendants' contention that "Plaintiff ***cannot*** allege the 'falsity'" of the Streamlined Company, Healthiest Balance Sheet Statement because the Complaint does not "discuss[] any facts related to the . . . TAM market" (MTD at 15) misreads the allegations.  The Complaint emphasizes the actionable portions of the statement: "***With a streamlined company and our healthiest balance sheet in years, we are now going on offense*** to grow our business across a vast, mostly untapped residential TAM."  ¶59.  The Complaint also clearly explains why

---

*Solar Sec. Litig.*, 2008 WL 4369987, at *12 (N.D. Cal. Sept. 24, 2008); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006).

[10]  Were Defendants' argument viable, executives everywhere would render the securities laws a dead letter by starting every statement with "I think" before "embedd[ing]" or "imply[ing]" verifiable facts.  *Cf. Chabot v. Walgreens Boots All., Inc.*, 2023 WL 2908827, at *13-*14 (M.D. Pa. Mar. 31, 2023) ("even those statements that constitute opinion ***contain embedded facts***"); Defendant's "comments not only express an opinion . . . but also ***imply*** facts").

the statement is false and misleading – without mentioning, for example, "residential TAM" (total addressable market).  *See* ¶67.

Defendants' related claims that Plaintiff has not pled facts about SunPower's "2Q21 results" or "the overall positioning of the Company," fail for the same reasons.  Mot. at 15.[11]  So too does their assertion that Plaintiff must explain how the $27 million charge to replace faulty connectors "'call[s] into question'" the factual basis of their statements about revenue, margins, or the Company being "on track" to meet guidance.  Mot. at 15.  These statements, at best, omitted: the development of cracking in connectors in nearly all of the Company's commercial systems; the need to spend that $27 million replacing those connectors; and the related, negative financial impact on the Company.  *See* ¶¶50, 67.

Third, the Motion's puffery arguments strip the statements from their context.  While it is generally true vague statements are not actionable, "even 'general statements of optimism, when taken in context, may form the basis for a securities fraud claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *Quality Sys.*, 865 F.3d at 1143.  "For example, reassuring investors that 'everything [was] going fine' with FDA approval when the company knew FDA approval would never come was materially misleading."  *Id.* (citing *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)); *see also Forescout*, 63 F. 4th at 770.

Here, Defendants' statements cannot be dismissed as mere "puffery" because, when considered in their full context, they "'contravene[] the unflattering facts in [Defendants'] possession.'"  *See id*.  In an attempt to mischaracterize Defendants' statements as "vague," the Motion reduces them to mere snippets – "'solid . . . results,'" "'execution,'" "'on track,'" "'well positioned,'" etc.  Mot. at 9.  For example, the Motion removed the present tense phrases "have found," "[w]ith" and "now" from the statement "we ***have found*** our footing. ***With*** a streamlined

---

[11]   Defendants cite their SEC filings as purported proof that the Revenue and Margin Statement was true, arguing: "the statement was made at the same time that CIS revenue had increased 30% year over year, suggesting the statement was an accurate assessment."  Mot. at 15.  However, it is irrelevant whether SunPower ***reported*** growth in revenue; the statement misleadingly concealed the development of cracking and risk of related repair or other charges to SunPower.

company and our healthiest balance sheet in years, we are **now** going on offense." *Contrast id.*, *with* ¶59.  Fairly read in context – the statement was made just one month after announcing the anticipated sale of the heavy business – the statement is a false reassurance and/or material omission that Defendants had sufficient information that SunPower's business was not currently hamstrung by problems in its soon-to-be-sold CIS segment.  *See Quality Sys.*, 865 F.3d at 1143. The Motion's string cite to nine or more cases purportedly concerning "nearly identical language" (Mot. at 9-10) is not helpful because it fails to consider the context of the statements or what they concealed.  *See DocuSign*, 2023 WL 3000583, at *12 ("Whether a statement is [actionable] turns on particular language and therefore requires an individualized analysis of each statement.").

Fourth, the Motion claims the alleged statements are forward looking.  This, too, is a mischaracterization.  For example, the Complaint alleges that Faricy's August 3 Continued Execution and On Track Statements are false and misleading.  ¶39.  But Defendants wrongly claim: (1) that Plaintiff has alleged SunPower's "actual financial guidance" to be actionable (Plaintiff has not); and (2) that because the On Track Statement mentions guidance, it also must be forward looking.  Mot. at 10.  The Ninth Circuit has prohibited such transparent attempts to "transform" statements of present fact into forward-looking statements by "combining" them with other statements.  *Quality Sys.*, 865 F.3d at 1141; *see also Forescout*, 63 F 4th at 769.

Moreover, statements that a defendant is "on track" to meet financial guidance are not forward looking.  *See, e.g.*, *Hatamian*, 87 F. Supp. 3d at 1164 ("on track" statement actionable); *Bielousov*, 2017 WL 3168522, at *5 ("[w]e believe we're still on track" statement "is not forward-looking"); *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *13 (D. Or. June 27, 2017) (same); *Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147, at *6 (S.D. Cal. Sept. 19, 2016) (same); *Mulligan v. Impax Laboratories, Inc.*, 36 F. Supp. 3d 942, 964, 965 (N.D. Cal. 2014) (same); *In re Secure Computing Corp. Sec. Litig.*, 184 F. Supp. 2d 980, 990 (N.D. Cal. 2001) (same).

**2.     Defendants' Statements Concerning the Risk SunPower Might Experience Defects or Other Quality Issues in Its Products or Product Components Were Materially False and Misleading**

The Complaint alleges that risk warnings made on August 4, 2021 and November 4, 2021 in SunPower's Forms 10-Q filed with the U.S. Securities and Exchange Commission ("SEC")

1   falsely purported to warn investors that product or component defects "*may*" or "*could*" impair

2   SunPower's business were each materially false and misleading.  In fact, these "risks" had already

3   materialized in nearly all of SunPower's commercial solar systems since 2019.  *See* ¶¶71, 75.

4         It is well settled that "[r]isk disclosures that 'speak[] entirely of as-yet-[sic] unrealized risks

5   and contingencies' and do not 'alert[] the reader that some of these risks may already have come

6   to fruition' can mislead reasonable investors."  *Alphabet*, 1 F.4th at 703-04 (quoting *Berson*, 527

7   F.3d at 985-87).  Further, purported warnings mislead even where only "*some*" of the warned-of

8   risks "*may*" have already materialized, whether any adverse impact from those risks has also

9   materialized.  *Alphabet*, 1 F.4th 687 at 703-04; *see also Forescout*, 63 F 4th at 779 ("Defendants

10  cannot rely on boilerplate language describing **hypothetical** risks to avoid liability for the failure

11  to disclose that the company already had information **suggesting** the [risk] **might** [materialize]").

12        Allegedly actionable risk warnings are evaluated as omissions.  *See Alphabet*, 1 F.4th at

13  703-04.  For such allegations, "[t]he standard is whether there is a 'substantial likelihood' that the

14  [omitted] information at issue 'would have been viewed by the reasonable investor as having

15  significantly   altered   the   total   mix   of   information.'"   *Id.*; *see also Rabkin v. Lion*

16  *Biotechnologies, Inc.*, 2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ("'A generic warning of a risk

17  will not suffice when undisclosed facts on the ground would substantially affect a reasonable

18  investor's calculations of probability.'") (Quoting *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d

19  245, 251 (2d Cir. 2014)).  As the Supreme Court has clarified, the inquiry is not the **extent** to which

20  the risk has materialized, but whether the omitted information would be **material** to investors.  *See*

21  *Matrixx*, 563 U.S. at 28.  "Materiality," in turn, "is a fact-specific inquiry" that "should ordinarily

22  be left to the trier of fact."  *See Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177, 1178

23  (9th Cir. 2009) *aff'd Matrixx*, 563 U.S. 27 (2011); *Alphabet*, 1 F.4th 687 at 700 (same).

24        The 14 alleged false risk warnings were published shortly before and after Defendants'

25  announcement that they were reviewing SunPower's commercial business for sale (¶¶52-56) and

26  phrased entirely as contingencies.  Defendants purported to warn, for example: "defects **could**

27  cause us to incur significant . . . costs"; "we **may** be responsible for repairing or replacing defective

28  parts"; and "**potential future** product or component failures **could** cause us to incur substantial

expense to repair or replace defective products or components."  *See* ¶¶11, 14, 44-46, 62-64.  In truth, by August 4, 2021 and November 4, 2021, cracking in connectors in SunPower's commercial solar systems, and the risk of related costs, had materialized.  The defects "developed over time" in "nearly all" of SunPower's commercial solar systems "since 2019."  *See* ¶¶71, 75. Further, these long-developing risks were detected, if not earlier, in connection with the Company's due diligence in seeking to sell its commercial business.  ¶¶72-73.  These facts are sufficient; Plaintiff need not allege the exact date Defendants first discovered cracked connectors. *See DocuSign*, 2023 WL 3000583, at *17 (contradictory facts present "by the start of the class period"); (allegations sufficient to test in discovery "[w]hether [Defendants] actually w[ere] aware of these risks").  In *Berson*, for example, the Ninth Circuit rejected the argument that plaintiffs had not shown that the company ever received three of the four stop-work orders or that these orders halted any work that was later reported as backlogged.  527 F.3d at 985; *see also id.* at n.1 (reasoning the stop-work orders were "***likely*** still in effect.").  It is thus plausible and in fact highly "likely" that, given the facts just summarized, the warned-of risks materialized by, and were still present as of, August and November 2021.  *See* ¶¶71, 75.

The Motion does not dispute that cracking in connectors, or the risk of more widespread cracking or of consequent costs, was a fact that had materialized by the time of the challenged statements.  Instead, the Motion argues for a much higher standard requiring two distinct elements nowhere found (and indeed rejected) in controlling authority, namely: (1) that not just the risk, but also the associated "financial loss or other impact," be "near-certain"; and (2) that the "***full*** scope" and "***extent***" of the risk be "known" to Defendants.  Mot. at 17.

The Ninth Circuit has rejected this standard.  Defendants rely on the Sixth Circuit's *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483 (6th Cir. 2015), but the Ninth Circuit recently "decline[d] to follow" that "unpublished decision."  *Alphabet*, 1 F.4th at 704.[12]  Nor do the *Pivotal* or *Kim*

---

[12]   For similar reasons, the Court should disregard out-of-circuit and unpublished in-circuit cases suggesting risk warnings can never be actionable.  Mot. at 17; *see In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346 (S.D.N.Y. 2008) (risk disclosures generally non-actionable); *In re Foundry Networks, Inc.*, 2002 WL 32354617 (N.D. Cal. June 6, 2002) (unpublished) (same).

cases support the incorrect proposition that Plaintiff must plead the warned-of risk had "***fully***

materialized."  Mot. at 16.  Both the *Pivotal* and *Kim* opinions quote the Ninth Circuit's *Berson*

opinion, which reads: "Nothing alerts the reader that ***some*** of these risks ***may*** already have come

to fruition."  *Berson*, 527 F.3d at 986.[13]  It is misleading for the Motion to quote only the "come

to fruition" portion of the *Berson* opinion to support their incorrect description of the law.[14]

Indeed, were plaintiffs required to plead that Defendants knew the full ***extent*** of, and ***financial***

***loss*** associated with, a risk, executives could avoid liability by deliberately avoiding investigating

the extent of the problem or scope of corresponding harm.

Moreover, further allegations bolster the inference that purportedly-warned-of risks had

already materialized.  In addition to the temporal proximity between the alleged statements and

disclosures, the timing of Defendants' reviews of SunPower's commercial segment prior to its sale

supports scienter.  *See, e.g.*, *In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293, at *20 (W.D.

Wash. Apr. 19, 2019) (defendant's "detailed due diligence" prior to a merger supported inference

of scienter).  The Ninth Circuit's *Reese* opinion, though not involving risk factors filed on

Form 10-Q, is instructive.  There, the defendants argued their statements about "'corrosive

conditions'" in BP's pipelines were not false because they were subject to change as the

corporation continued its "'ongoing review and subsequent pigging'" of those pipelines.  747 F.3d

at 573.  In other words, defendants argued they did not know the full extent of the problems.  The

Ninth Circuit rejected this argument, reasoning: "BP knew that the [pipe]line had not been pigged

[a type of quality test or review] since 1990 and that there was insufficient inspection data on the

line."  *Reese,* 747 F.3d at 573.

Here, like BP, Defendants claimed to be conducting reviews of the commercial segment,

including: Faricy's May 2021 statements that he was reviewing the commercial segment (¶8);

---

[13]   *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *6 (N.D. Cal. July 21, 2020) (quoting *Berson*
as quoted in *Matrixx*, 585 F.3d at 1181); *Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL
2232545, at *7 (N.D. Cal. May 23, 2019).

[14]   The remainder of the cases cited in the Motion at 16-17 are consistent with the controlling
standard in this circuit (*e.g.*, because they required only that materialization of "some" portion of
the risk be a "'near certainty'").

1   SunPower's summer 2021 "working through" of permitting delays and attempts to "perfect[]

2   asset[s]" in its commercial business (¶43); SunPower's summer 2021 sale (and review pursuant to

3   sale) of "certain commercial projects" (¶39); and SunPower's due diligence on its commercial

4   segment pursuant to its sale (¶¶72-73).  Further, SunPower updated its safety manual shortly after

5   the November 2021 statements to include specific new warnings about cracking in connectors.

6   ¶69.  Like the "pigging" in *Reese*, the manual had not been updated for over a year (*id.*), suggesting

7   that the materialization occurred before and prompted the update to the manual.[15]

8          Finally, the safe harbor is not available to Defendants.  This is not a case where, for

9   example, Defendants warned of something not in their unique control, like an earthquake, and then

10  an earthquake struck.  Rather, because "Defendants had superior knowledge about their control

11  over the very metric – *i.e.*, [product defects] – at issue in the cautionary language" but "omitted

12  material information . . . even the most cautionary language . . . is insufficient to bring the above

13  forward-looking statements into the PSLRA's safe harbor."  *Lamartina v. VMware, Inc.*, 2023 WL

14  2763541, at *12 (N.D. Cal. Mar. 31, 2023) (citing *Washtenaw Cnty. Emps.Ret. Sys. v. Celera

15  Corp.*, 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012)); *see also Quality Sys.*, 865 F.3d at 1148;

16  *Forescout*, 63 F.4th at 781.

17          **B.      The Allegations in the Complaint Raise a Strong Inference of Scienter**

18          A complaint pleads scienter if it "state[s] with particularity facts giving rise to a strong

19  inference that the defendant[s] acted with the required state of mind."  15 U.S.C. §78u-4(b)(2)(A).

20  A "strong inference" is one that is "cogent and at least as compelling as any opposing inference

21  one could draw from the facts alleged."  *Tellabs v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324

22  (2007).  The inference "need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even the 'most

23  plausible of competing inferences.'"  *Id.*  Allegations of motive are not required.  *Id.* at 324-35.

24

25  ────────────────────
    [15]  Thus, the alleged statements were false when made, and Defendants miss the mark in arguing
26  there was no duty to update after the last statement on November 4, 2021.  Mot. at 17-19.
    Defendants are also wrong as a matter of law.  *See LDK Solar*, 2008 WL 4369987, at *11 ("if
27  defendant learned . . . that his prior statements were false at the time he made them, he had a duty
    to correct [them].");  *Coble v. Broadvision Inc.*, 2002 WL 31093589, at *7-*8 (N.D. Cal. Sept. 11,
28  2002) (same);  *Backman v. Polaroid Corp.*, 910 F.2d 10, 16-17 (1st Cir. 1990) (*en banc*) (same).

The required state of mind is knowledge or deliberate recklessness.  Where Defendants knew or had access to contradictory information, a strong inference is sufficiently alleged.  "'[A]n actor is reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.'"  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010).

### 1.   Defendants' Contemporaneous Knowledge of or Access to Material Information Concerning the Risk of Cracking in SunPower's Commercial Solar Systems Is Sufficient to Plead a Strong Inference of Scienter

The Complaint alleges that Defendants admitted, and that financial analysts confirmed and expanded on, Defendants' contemporaneous knowledge of or access to facts concerning cracked connectors and the risk of and from cracked connectors, contradicting, and/or rendering actionably misleading by omission, Defendants' August 3-4, 2021 and November 3-4, 2021 statements.  *See, e.g.*, *Reese*, 747 F.3d at 564 (crediting "media coverage and the company's eventual admissions" in combination).  Notably, the financial analyst reports pled in the Complaint are based on public and nonpublic information, such as "meetings with management, dealers and ex-sales personnel." ¶82.  These allegations are sufficient to plead scienter.

To plead scienter, a complaint may plead a "combination" of facts, none of which need to be from confidential witnesses, internal reports, or other specific sources.  *See Alphabet*, 1 F.4th at 707 (collecting authority for proposition "[a]llegations of suspicious stock sales or information from confidential witnesses are not needed"); *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *8 (N.D. Cal. Nov. 4, 2020) (crediting "the combination of the core operations doctrine . . . post-class admissions . . . and the close temporal proximity between the challenged statements and actions inconsistent with those statements"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) ("this Court is aware of no authority requiring confidential witness allegations").

Further, a plaintiff need not identify the precise time at which facts contradicting the alleged false statements first materialized; it is sufficient to plead that they "***persisted***" during the relevant time period and thus were contemporaneous.  *See Hatamian*, 87 F. Supp. 3d at 1163; *see*

*also Reese*, 747 F.3d at 575 ("the ***relatively constant, long-term nature of the information***" supports inference of scienter).  In *Hatamian*, Judge Gonzalez Rogers credited "[t]he confluence of [] specific allegations" which, though they did not identify the precise moment(s) when Defendants learned of product problems, nevertheless "'strongly ***imply*** Defendants' contemporaneous knowledge that the statement was false when made.'"  87 F. Supp. 3d at 1163.  In particular, the Court credited allegations that: the product in questions was "critical for [defendant]'s financial success"; "certain of the defendants had been involved when the [product] launch was delayed"; and "the production ***timeline*** for the [product]" – all of which "support a strong inference [defendants] knew of the [adverse facts] that allegedly ***persisted***."  *Id.*

Here, the Complaint alleges: (a) facts establishing contemporaneous facts and conditions; (b) that those facts were known or readily available to Defendants; and (c) that those facts contradict Defendants' statements or make them misleading at the time they were made.  Faricy, in particular, who immediately started a "deep [dive]" into the commercial business when hired as CEO (¶8) and took a lead role in considering strategic options for, and then selling, the CIS business (*see* ¶¶52-56) and later abandoning the CVAR business (*see* ¶79), was personally involved in reviewing the commercial business.  *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008) ("allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information"); *see also DocuSign*, 2023 WL 3000583, at *18 (data was "accessible to the individual defendants, and [plaintiffs] alleged statements by individual defendants that plausibly show they tracked that data.").  Significantly, review included due diligence for sale of the CIS business (¶¶72-73, 77), and "[e]vidence of high levels of [cracking] would be central to this inquiry."  *See Reese*, 747 F.3d at 571.  Most important, the timeline of cracking in connectors was a fact that persisted for years as it was a defect that "developed over time" and affected "nearly all C&I systems ***since 2019***."  ¶¶71, 75.

The Motion misses the mark by complaining that the Complaint does not include confidential witnesses or internal documents (Mot. at 3, 23) despite Defendants' knowledge that discovery in this action is stayed pursuant to the PSLRA.  15 U.S.C. §78u-4(b)(3)(B); *see, e.g., In re Iso Ray, Inc. Sec. Litig*, 189 F. Supp. 3d 1057, 1077 (E.D. Wash. 2016) (scienter allegations

1  "not undercut" where "Defendants note the Amended Complaint 'is devoid of a single allegation

2  from a confidential witness . . . or a single internal document'").

3         Defendants' response to the analysts' reporting is to ask the Court to disavow the mandate

4  of the Supreme Court in *Bell Atl. Corp. v. Twombly* to consider the allegations in a light most

5  favorable to Plaintiff and, instead, take Defendants' interpretation of the reports – *i.e.* that they

6  constitute "rank speculation" (Mot. at 22) – as true.  550 U.S. 554, 556 (2007).  But the Motion

7  fails to explain in what way the "product quality assessment" described in SunPower's January 20,

8  2022 press release (¶71) is meaningfully different from a product quality assessment conducted

9  pursuant to the "due diligence" (¶¶72-73); either inference supports Plaintiff's allegations.

10               **2.      The Core Operations Doctrine, in Combination with**
                          **Allegations Concerning Defendants' Access and Attention to**
11                        **Information About the Company's Second-Largest Business**
                          **Segment, Bolsters the Inference of Scienter**
12

13         The Ninth Circuit recognizes three different version of the core operations doctrine.

14  *S. Ferry*, 542 F.3d at 785-86.  Though two of those versions "may independently satisfy the

15  PSLRA," the Ninth Circuit has clearly stated that allegations "regarding management's role in a

16  company . . . may be used ***in any form*** along with other allegations" – in particular, Defendants'

17  access to information – to plead a compelling inference of scienter.  *Id.*

18         Here, SunPower's commercial business – including both the CIS (the Company's second-

19  largest business segment) and CVAR components – generated more than 23% of the Company's

20  revenue and was a key point of differentiation for the Company, which was the market share leader

21  in that market.   ¶¶6-7, 52.  The health of the commercial business was critical to SunPower's

22  financial success.  *See* ¶¶71, 79-80 (financial impact).  These allegations may not plead scienter

23  on their own, but they do "raise a strong inference that [Defendants] knew about the ***risk*** of such

24  pressure from" cracking in connectors in commercial solar systems "when [Defendants] made the

25  challenged statements."  *Apple*, 2020 WL 6482014, at *9 (crediting scienter allegations that "China

26  is Apple's third-latest market . . . and accounts for nearly 20% of Apple's revenue").

27         In response to these allegations, the Motion argues Plaintiff must plead that it would be

28  "'absurd'" to suggest Defendants did not know the "***full extent*** of the problem or its

1   *ramifications*." Mot. at 23.  This is not the standard for the core operations doctrine.  Defendants

2   are quoting the "absurd" language from the third and final version of the doctrine, but the first and

3   second versions remain open to Plaintiff.  *See S. Ferry*, 542 F.3d at 785-86.  Defendants' attempt

4   to repurpose their risk warning argument – *i.e.*, Plaintiff must plead "full" materialization of the

5   risk – mischaracterizes, again, controlling authority.

6               **3.      The Temporal Proximity of Defendants' False Statements and
                         Corrective Disclosures, and the Scope of the Cracked
7                        Connectors, Bolster a Strong Inference of Scienter**

8               The long-term and constant nature of component defects and Defendants' personal

9   attention to the commercial business, on the one hand, and the tight temporal proximity of the

10  alleged statements and the revelations that the concealed risks had materialized, on the other hand,

11  strongly bolsters the inference of scienter.  As the Complaint pleads, the cracking defects

12  "developed over time" and affected "nearly all C&I systems *since 2019*" (¶¶71, 75).  Defendants'

13  efforts to divest the commercial business transpired "through much of 2021" (¶78).  Yet the

14  Complaint pleads a brief Class Period marked by the close temporal proximity between the

15  August 2021 and November 2021 false statements and, among other disclosures, the January 20,

16  2022 revelation that the Company was taking a $27 million charge to the prior fiscal quarter.  ¶71.

17              Close temporal proximity between allegedly false statements and the disclosure of

18  information contradicting those statements bolsters the inference of scienter.  *Reese*, 747 F.3d at

19  574-75 (disclosures separated by *three to six months* bolster the inference of scienter); *Roberti v.

20  OSI Sys., Inc.*, 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015) (*six months*); *Rihn*, 2016 WL

21  5076147, at *9 (two weeks).  Indeed, the Ninth Circuit places even "more weight" on temporal

22  proximity where, like here, no intervening events occur between the misrepresentation and

23  disclosure.  *See Fecht v. Price Co.*, 70 F.3d 1078, 1083-84 (9th Cir. 1995).

24              Here, the alleged statements were made on August 3-4, 2021 and November 3-4, 2021.  It

25  was only three months and one month later, respectively, that SunPower, for the first time in over

26  a year, updated its manual to newly warn of cracking in connectors.  ¶69.  It was only five and

27  one-half months and two and one-half months, respectively, after the statements that SunPower

28  (pre)announced that: (a) it was missing its 4Q21 and FY21 guidance; (b) it was taking a

1   $27 million charge in the already-ended 4Q21 (the same quarter as the November statements); and

2   (c) cracking and the risk of cracking had developed in third-party connector components requiring

3   SunPower to recall and replace those components.  ¶¶71, 86; *see also* ¶¶72-75.  Less than a month

4   later, SunPower announced it was exiting – really, abandoning at a $15 million hit to the Company

5   – its light commercial business, a decision that "appears to follow the $27mn quality issue related

6   to the connectors."  *See* ¶¶79-80; *Price Co.*, 70 F.3d at 1083-84 (decision to terminate sales

7   expansion program ***more than two months*** after misrepresentations supports scienter).  Nor did

8   any event intervene between the statements and disclosure that might have caused cracking.

9        The Motion does not address the temporal proximity of the statements to any disclosures

10  or revelations – except, that is, to argue SunPower's December update to its safety manual, in

11  which it warned of the very issue it would disclose a month later (¶¶69, 71), "was over a month

12  ***after*** the last challenged statement.  The manual works against Plaintiff, not for it."  Mot. at 22

13  (emphasis in original).  As the case law cited above makes clear, Defendants have it backward; a

14  lone month between statements and a disclosure significantly supports the inference of scienter.

15       Compounding its error, the Motion argues Plaintiff must plead not only Defendants' access

16  to contradictory information but further that Defendants "knew about the ***extent*** of the cracking

17  issue, its ***cause*** and ***scope***."  Mot. at 21 (citing, without explanation or discernible purpose, 109

18  paragraphs of the Complaint).  Defendants cite no authority for this impossible requirement

19  because there is none.  *See* Mot. at 21-22.  For example, Defendants assert that SunPower's updated

20  manual "suggests that SunPower did not even know the ***cause*** of the potential cracking issue at

21  the time." Mot. at 22.  Even were such an inference warranted, it is irrelevant; Defendants are not

22  permitted to mislead investors about cracking in nearly all of their solar systems since 2019 merely

23  because they did not yet know the cause.  Again, were that the standard, every executive would

24  have the incentive to avoid learning the cause of any adverse information.

25       Further factual allegations concerning timing bolster the inference of scienter.  In

26  particular, the timing of Defendants' attention to the commercial business, and the reviews they

27  conducted of the business pursuant to their decisions to sell it, further support the inference.  Right

28  before the Class Period, Defendants told investors they were experiencing "some utility and

permitting delays" as SunPower was "running into more scrutiny," as the Company and third parties took an extended look at SunPower's commercial projects and products. ¶¶43, 47. At the same time, Defendants were actively working to determine the commercial businesses' future. Faricy took a deep dive into the commercial business starting in May 2021. ¶8. By August 3, 2021, the Company had already sold "certain commercial projects." ¶39. On October 5, 2021, Defendants announced their intention to sell the commercial CIS business. ¶52. Indicating how far along in the process they already were, they also announced: "we're looking to complete the process by the end of the calendar year." ¶52. Indeed, by November 3, 2021, Faricy was describing SunPower as an already "streamlined company" that had "found [its] footing" and that was "*now* going on offense," thus clearly reassuring investors SunPower faced no existing obstacles to selling off the commercial business or meeting its guidance. ¶59. SunPower further created and filled a data room and hired multiple consultants pursuant to its sale of the CIS business. ¶77. SunPower also hired a new head of its supply chain at the exact time it announced its entire stock of connectors for commercial systems could cause fires. ¶71. Given these facts, it is highly implausible that SunPower spent 2021 closely reviewing the commercial business but only discovered a defect (again, that developed over time in nearly every one of its commercial systems since 2019) sometime after November 4, 2021, then immediately hired a new supply chain executive and consultants and completed negotiations to spin off its second-largest business segment, while also exiting its CVAR business. *See Advanced Micro Devices*, 87 F. Supp. 3d at 1163 ("The confluence of these specific allegations" supports inference of scienter).

Finally, the magnitude of the cracked connectors problem, and of the financial and safety risks created by those defects, in combination with the temporal proximity of the statements to the revelations confirming their falsity, strongly bolsters the inference of scienter. *See Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004) ("reasonable to infer" scienter from "magnitude" of problem); *Reese*, 747 F.3d at 575 ("constant, long-term nature of the information . . . bolster[s] the inference of scienter"). A defect present in nearly all SunPower's commercial solar systems connectors since 2019 (¶¶71, 75), causing a risk of fires

1  (*see* ¶73), and costing the Company $46 million and forcing it to abandon the commercial business

2  ($31 million to CIS, $15 million to CVAR) (¶¶71, 79) does not just materialize overnight.

**4.      Holistically Considered, Plaintiff's Allegations of Scienter Are Reasonable, Strong, and More Compelling than Any Opposing Inference**

5          As explained above, the Complaint pleads a number of facts that in combination are

6  sufficient to allege a compelling inference of scienter.   The relevant inquiry for scienter is

7  "'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter.'"

8  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (quoting *Tellabs*, 551

9  U.S. at 323) (emphasis in original).   Where nonculpable inferences are as equally compelling as

10  the culpable inferences, the tie goes to the plaintiff.   *Tellabs*, 551 U.S. at 324.

11         The Supreme Court has made clear that Plaintiff need not plead motive.   *Tellabs*, 551 U.S.

12  at 321, 325; *Matrixx*, 585 F.3d at 1182, *aff'd*, 563 U.S. 27 (2011); *see also Apple*, 2020 WL

13  6482014, at *12.   Nor does the absence of stock sales support an innocent inference.   *See Flynn v.*

14  *Sientra, Inc.*, 2016 WL 3360676, at *15 (C.D. Cal. June 9, 2016) (the argument that "the lack of

15  insider stock sales . . . negates scienter is contrary to controlling case law") (citing *No. 84 Emp.*

16  *Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 926, 944 (9th Cir.

17  2003) ("Scienter can be established even if the officers who made the misleading statements did

18  not sell stock during the class period."); *see also Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115,

19  1124, 1149 (N.D. Cal. 2017) (Refusing to judicially notice or consider Forms 4 where "Complaint

20  mentions no stock sales of any kind . . . [and] does not rely on allegations of an improper financial

21  motive to demonstrate scienter, nor does it reference stock sales.").

22         The Motion puts its head in the sand concerning plausible inferences.   For example, it

23  charges that "Plaintiff provides no answer to that fundamental question," *i.e.*, "why would the

24  Company not have disclosed" the cracking defect "sooner?"   Mot. at 24.   But it is perfectly

25  plausible to infer Defendants "conceal[ed] bad news in the hope that it w[ould] be overtaken by

26  good news" or otherwise made a "reckless[] gamble."   *Makor Issues & Rts., Ltd. v. Tellabs Inc.*,

27  513 F.3d 702, 710 (7th Cir. 2008).   In any event, the Complaint *does* answer the Motion's question:

28  the cracking "issue need[ed] to be resolved *before* the intended sale of the C&I division occur[ed]."

¶73.   Defendants' desire to complete the sale of the CIS business to SunPower's majority shareholder, not to mention Sial's departure shortly after the negative 2022 disclosures, supports the inference that Defendants had a motive "for concealing . . . deficiencies [concerning the risk of cracking in connectors] from investors" at least until the CIS sale was sufficiently close to completion.  *See, e.g.*, *Walgreens*, 2023 WL 2908827, at *18 (motive to "buy time" where FTC might nix merger); *Lemen v. Redwire Corp.,* 2023 WL 2598402, at *4 (M.D. Fla. Mar. 22, 2023) (motive pled where "neither [defendant] wanted the . . . merger to fail" and CFO's "fear of being fired" evidenced by fact that "he eventually was").

At the pleading stage, "dishonest insiders may be able to cover their tracks fairly well . . . . Unless reasonable inferences from circumstances suffice to get a case to a jury, the welfare of victimized investors and the integrity of the stock market may be insufficiently protected from deceptive manipulators."  *See Am. W. Holding Corp.*, 320 F.3d at 946.  Here, under a holistic analysis, the inference that Defendants knew or had access to sufficient contradictory information to render their statements misleading is by far the more compelling one.

### C.   Control Person Liability Is Alleged as to Defendants SunPower, Faricy, and Sial

"'[C]ontrol person liability claims can generally only be dismissed at the pleading stage if a plaintiff fails to adequately plead a primary violation.'"  *Rabkin*, 2018 WL 905862, at *19.  For the reasons above, Plaintiff has a pled a primary violation, the only element of control person liability the Motion challenges.  Mot. at 24.  Nothing further is required.

## V.   CONCLUSION

For the foregoing reasons, the Complaint pleads violations of the Exchange Act in compliance with the PSLRA and federal rules.  The Court should deny the Motion.

1    DATED:  April 21, 2023                      Respectfully submitted,

2                                                ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
3                                                SHAWN A. WILLIAMS
                                                 KENNETH J. BLACK
4                                                SNEHEE KHANDESHI

5

6                                                        s/ Kenneth J. Black
                                                 KENNETH J. BLACK
7
                                                 Post Montgomery Center
8                                                One Montgomery Street, Suite 1800
                                                 San Francisco, CA  94104
9                                                Telephone:  415/288-4545
                                                 415/288-4534 (fax)
10                                               shawnw@rgrdlaw.com
                                                 kennyb@rgrdlaw.com
11                                               skhandeshi@rgrdlaw.com

12                                               Lead Counsel for Lead Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on April 21, 2023, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the email addresses on the attached Electronic Mail Notice List, and

5

I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

6

the non-CM/ECF participants indicated on the attached Manual Notice List.

7

       s/ Kenneth J. Black

KENNETH J. BLACK

8

9

ROBBINS GELLER RUDMAN

    & DOWD LLP

Post Montgomery Center

10

One Montgomery Street, Suite 1800

San Francisco, CA 94104

11

Telephone: 415/288-4545

415/288-4534 (fax)

12

Email: kennyb@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4882-0832-3421.v1

# Mailing Information for a Case 4:22-cv-00956-HSG Jaszczyszyn v. SunPower Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Katherine Leigh Henderson**
  khenderson@wsgr.com,lnicolini@wsgr.com

- **Snehee Khandeshi**
  skhandeshi@rgrdlaw.com

- **Phillip C Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Ava K. Mehta**
  amehta@wsgr.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Yana Pavlova**
  ypavlova@wsgr.com,lnicolini@wsgr.com

- **Pavithra Rajesh**
  prajesh@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- **John Charles Roberts , Jr**
  jroberts@wsgr.com,ysheard@wsgr.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Dylan Grace Savage**
  dsavage@wsgr.com,lnicolini@wsgr.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,WGravitt@rgrdlaw.com,e_file_sd@rgrdlaw.com,sbloyd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)