KATHERINE L. HENDERSON, State Bar No. 242676
Email: khenderson@wsgr.com
DYLAN G. SAVAGE, State Bar No. 310452
Email: dsavage@wsgr.com
YANA PAVLOVA, State Bar No. 332858
Email: ypavlova@wsgr.com
AVA K. MEHTA, State Bar No. 341686
Email: amehta@wsgr.com
WILSON SONSINI GOODRICH & ROSATI P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000

JOHN C. ROBERTS JR., admitted *pro hac vice*
Email: jroberts@wsgr.com
WILSON SONSINI GOODRICH & ROSATI P.C.
701 5th Avenue, Suite 5100
Seattle, WA 98104
Telephone: (206) 883-2500

Attorneys for SunPower Corporation,
Peter Faricy, and Manavendra S. Sial

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PIOTR JASZCZYSZYN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNPOWER CORPORATION, et al.,<br><br>Defendants. | Case No. 3:22-cv-00956-AMO<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF SECURITIES LAWS**<br><br>Hearing Date: July 20, 2023<br>Hearing Time: 2:00 p.m.<br>Dept.: Courtroom 10, 19th Floor<br>Judge: Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. PLAINTIFF FAILS TO PLEAD A SECTION 10(B)/RULE 10B-5 CLAIM | 2 |
|     A. The Complaint Fails to Allege a False or Misleading Statement | 2 |
|         1. Statements 1, 2, 4, and 8 Contain Inactionable Puffery | 2 |
|         2. Statements 2-4 and 8 are Protected by the Statutory Safe Harbor | 3 |
|         3. Even if Actionable, Plaintiff Fails to Allege with Particularity that the Non-Risk Factor Statements Were False When Made | 5 |
|         4. Plaintiff Fails to Allege with Particularity that the Risk Factor Statements Were False When Made | 8 |
|     B. The Complaint Fails to Allege a Strong Inference of Scienter | 10 |
| CONCLUSION | 15 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) .......................................................................................................... 9

*Bondali v. Yum! Brands, Inc.*,
  620 F. App'x 483 (6th Cir. 2015) ................................................................................................... 9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  No. 12-cv-06039-WHO, 2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) .................... 12, 14

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) ............................................................................ 1, 3, 10, 11, 15

*Hatamian v. Advanced Micro Devices, Inc.*,
  87 F. Supp. 3d 1149 (N.D. Cal. 2015) ...................................................................................... 10

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ........................................................................................ 3, 8, 9, 10, 11

*In re Apple Sec. Litig.*,
  No. 19-cv-02033-YGR, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ..................... 12, 14

*In re Copper Mountain Sec. Litig.*,
  311 F. Supp. 2d 857 (N.D. Cal. 2004) ........................................................................................ 2

*In re Eargo, Inc. Sec. Litig.*,
  – F. Supp. 3d –, 2023 WL 1997918 (N.D. Cal. Feb. 14, 2023) ........................................ 11

*In re McKesson HBOC, Inc. Secs. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..................................................................................... 6

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ............................................................................................ 3, 4, 14

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ................................................................................................. 7, 12

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ...................................................................................... 6

*In re Zillow Grp., Inc. Sec. Litig.*,
  No. C17-1387-JCC, 2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) ............................ 13

*Karth v. Keryx Biopharmaceuticals, Inc.*,
  6 F.4th 123 (1st Cir. 2021) ............................................................................................................. 9

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) .................................................................................................... 12

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) .................................................................................................... 13

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
    367 F. Supp. 3d 16 (S.D.N.Y. 2019) ............................................................................ 11

*Qureshi v. Countrywide Home Loans, Inc.*,
    No. C 09-4198 SBA, 2010 WL 841669 (N.D. Cal. Mar. 10, 2010) ............................ 3, 15

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014), *overruled in part by*
    *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) .................................................................. 9, 10, 11, 15

*SG Cowen Sec. Corp. v. U.S. Dist. Court*,
    189 F.3d 909 (9th Cir. 1999) ........................................................................................ 12

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009) ........................................................................................ 9

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .......................................................................................... 7

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) ................................................................................ 4, 7, 15

*Weston v. DocuSign, Inc.*,
    No. 22-cv-00824-WHO, 2023 WL 3000583 (N.D. Cal. Apr. 18, 2023) ......................... 1

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ........................................................................................ 4

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .................................................................................. 12, 14

**STATUTES**

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 ......... 1, 5, 14, 15

**RULES**

Federal Rule of Civil Procedure 9(b) ........................................................................................ 1, 15

Defendants hereby submit this reply in support of their Motion to Dismiss Amended Complaint ("Mem."), ECF No. 63.

## **INTRODUCTION**

Plaintiff comes nowhere close to meeting the strict requirements for pleading a federal securities claim under the PSLRA and Rule 9(b), a fact which the Opposition ("Opp.") highlights rather than disproves. Plaintiff cites SunPower's January 20, 2022 press release disclosing a third-party cracking issue and proactive replacement of parts, then claims that Defendants committed securities fraud because they did not make the announcement sooner. The Complaint, however, contains no well-pled factual allegations supporting that immense and untenable leap. Plaintiff's Opposition is unable to identify any particularized allegation that Defendants possessed information contradicting the challenged statements at the time the statements were made, nor any allegations creating a strong inference of scienter. Plaintiff instead latches onto a handful of vaguely optimistic statements on unrelated topics and some of SunPower's risk disclosures, attempting to sneak past a motion to dismiss on what is clearly nothing more than speculation and fraud by hindsight. Indeed, Plaintiff effectively admits that this lawsuit is based in unfounded "theory" rather than facts. Opp. 1. That is precisely the type of case that the PSLRA is designed to foreclose.

Unable to defend its own pleading, the Opposition largely talks about other cases. But those cases demonstrate what this one lacks. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023) involved allegations of black-and-white falsity about the state of the company's pipeline, bolstered by the accounts of twenty confidential witnesses ("CWs"), and the court nonetheless rejected other of the plaintiff's allegations which are similar to Plaintiff's here. Plaintiff also relies on *Weston v. DocuSign, Inc.*, No. 22-cv-00824-WHO, 2023 WL 3000583 (N.D. Cal. Apr. 18, 2023), another case with multiple CWs showing that the company made misleading statements about customer demand despite "warning signs" and "red flags," including that customers had already chosen not to renew. Nothing of the sort is alleged here. The Complaint alleges no CW accounts, contradictory internal reports, red flags, or post-class-period admissions. Built on puffery, opinion, and badly misquoted third-party analyst reports, it should be dismissed.

# ARGUMENT

## I. PLAINTIFF FAILS TO PLEAD A SECTION 10(B)/ RULE 10B-5 CLAIM

### A. The Complaint Fails to Allege a False or Misleading Statement

The Opposition attempts to obfuscate the separate arguments raised in the Motion, each of which separately warrants dismissal.

#### 1. Statements 1, 2, 4, and 8 Contain Inactionable Puffery

The Opposition concedes "it is generally true [that] vague statements are not actionable" under Ninth Circuit authority (Mem. 8-10), but claims Defendants' statements "cannot be dismissed as mere 'puffery'" because "considered in their full context[] they 'contravene[d] . . . unflattering facts in [Defendants'] possession.'" Opp. 12-13 (citation omitted). Plaintiff is wrong on the law and the facts.

Despite this being its core argument on puffery, Plaintiff does not even attempt to show how **Statements 1 and 2** were taken out of context or contravened unflattering facts in Defendants' possession, and it does not address **Statement 4** at all. Opp. 12-13. The Opposition thus concedes that the vague statements within **Statements 1, 2 and 4** are inactionable. *Compare* Mem. 9, 14-16 (Complaint alleges no facts calling into question, for example, that 2Q21 results were "solid" or that SunPower had "executed" that quarter), *with* Opp. 11-12.

With respect to **Statement 8**, Plaintiff quibbles that minor words like "with" and "now" amounted to "false reassurance" that "SunPower's business was not currently hamstrung by problems in its soon-to-be sold CIS segment." Opp. 12-13. The actual statement says nothing of the sort. In its entirety, it reads: "With a streamlined company and our healthiest balance sheet in years, we are now going on offense to grow our business." ¶59. "[S]treamlined company" actually refers to the sale of the CIS division (*id.*), and rather than providing false reassurances, SunPower discussed numerous issues with CIS including delayed projects and the business's "inherent lumpiness." Mem. 4-6 (citing ¶¶40-41, 52, 57). Fairly read in context, therefore, **Statement 8** is nothing more than "the 'feel good' speak" characteristic of puffery that any reasonable investor would understand as inactionable corporate optimism. *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 868 (N.D. Cal. 2004).

Plaintiff ignores a wealth of Ninth Circuit caselaw (Mem. 8-10) and instead cites *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017), for the proposition that puffery can be actionable in the limited situation when the statements provide "false assurance" about "*specific* aspects of a company's operation that the speaker *knows* to be performing poorly." Opp. 12-13 (emphasis added). In *Quality Systems*, however, the court found that statements about a "robust" sales pipeline were actionable only when they were part of a group of statements that included a "concrete description of the past and present state of the pipeline," "reassured" investors that the "number and type of prospective sales in the pipeline was unchanged, or even growing," and specified "what proportion" of specific markets were "greenfield," and where multiple CWs alleged that senior executives knew those specific statements were false. 865 F.3d at 1144. *Forescout*, Opp. 12, likewise involved "a concrete description of the past and present state of the [sales] pipeline" as "very strong" and "very healthy" that CWs alleged was "contravened" by "detailed" facts in the company's possession, including that sales representatives were having trouble making quotas due to increased competition and the company was engaging in a "pressure campaign" to have its employees misclassify deals, with defendants knowingly including illusory deals in their revenue projections while falsely reassuring investors that those deals were firm. 63 F.4th at 770-71, 768-69, 59-60. As there are no such specific allegations here, the puffery within **Statements 1, 2, 4 and 8** is inactionable. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021) (finding statements were inactionable puffery despite allegations of material omission related to the content of the positive statements) (Opp. 14-15).

### 2. Statements 2-4 and 8 are Protected by the Statutory Safe Harbor

The Opposition barely addresses the applicability of the safe harbor to the forward looking portions of **Statements 2, 3, 4, and 8**, which alone warrants dismissal. The Opposition does not even mention those portions of **Statements 4 and 8**. *Compare* Mem. 10-14, *with* Opp. 13. Plaintiff also now disclaims any challenge to **Statement 3**. Opp. 2 n.2. Thus, Plaintiff has "abandon[ed]" any safe harbor argument related to those statements by failing to address the issue in the Opposition. *See Qureshi v. Countrywide Home Loans, Inc.*, No. C 09-4198 SBA, 2010 WL 841669, at *6 n. 2 (N.D. Cal. Mar. 10, 2010).

Regarding **Statement 2**, the Opposition wrongly claims that "statements that a defendant is 'on track' to meet financial guidance are not forward looking." Opp. 13. That ignores the plain holding of *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) (Mem. 11), that "an unadorned statement that a company is 'on track' to achieve an announced objective" is forward looking because it "[is] merely [an] alternative way[] of declaring or reaffirming the objective itself." *Id.*; *see also Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 n.4 (9th Cir. 2022) (Mem. 11) (same). In *Tesla*, the defendants made statements that "preparations at . . . production facilities [were] on track to support the ramp of Model 3 production to 5,000 vehicles per week at some point in 2017," and that "[it] remain[ed] . . . on track to achieve a 5,000 unit week by the end of this year." 985 F.3d at 1190, 1194. **Statement 2** is nearly identical as it reads: "[W]e remain on track *to achieve our 2021 financial outlook*." ¶39 (emphasis added). Incredibly, the Opposition does not discuss the controlling precedent in *Tesla* or *Twitter* and instead cites exclusively pre-*Tesla* district court cases, which are inapposite. Opp. 13.

Plaintiff seems to think it can avoid the safe harbor if it does not challenge the "actual financial guidance." Opp. 2 n.2, 13. But Plaintiff challenged the guidance in paragraph 39 of the Complaint (**Statement 3**), which is the "financial outlook" referenced in **Statement 2,** ¶50 (citing to ¶39 as false and misleading). Even if Plaintiff had not challenged the guidance, there would be no basis for distinguishing *Tesla* on that ground: that case turned on whether the statement made "a concrete factual assertion about a specific present or past circumstance" that "goes *beyond* the assertion of a future goal." 985 F.3d at 1192. **Statement 2** does not.

Plaintiff also contends that Defendants impermissibly attempt to "combin[e]" a "statement[] of present fact" ("on track") with said guidance to "transform" the former into a forward-looking statement. Opp. 13. But that is absurd, as the two statements are joined together in the same sentence. ¶39 ("on track to achieve our 2021 financial outlook"). Plaintiff's citation to *Quality Sys.*, 865 F.3d at 1141, is not apt. *Quality Sys.* involved defendants' attempt to combine "materially false or misleading" statements regarding the "current state of [the company's] sales pipeline" with separate "forward-looking statements of projected revenue and earnings" to gain benefit of the safe harbor. *Id.* at 1141, 1147-48.

### 3. Even if Actionable, Plaintiff Fails to Allege with Particularity that the Non-Risk Factor Statements Were False When Made

The Opposition makes clear that Plaintiff's sole theory of falsity is an omissions theory. Critically, however, the non-risk factor statements at issue (**Statements 1-4**, **8**) have nothing to do with the cracking issue or product defects. Instead, Plaintiff challenges vague commentary on SunPower's general business and its prospects, then attempts to obfuscate this by claiming those statements were somehow "misleading" because Defendants did not disclose "that connectors across their commercial business had developed the 'cracking' problem" and that "[i]n truth, 'nearly all' of SunPower's commercial solar systems 'since 2019' were at risk from defective connectors that could experience cracking and cause fires and that would require SunPower to incur tens of millions of dollars in recall and replacement charges." Opp. 9. Plaintiff argues that "allegations that contradictory facts existed at the time of the statements are sufficient to satisfy the heightened pleading requirements of the PSLRA." Opp. 8. Even if Plaintiff could show any statement is actionable (it can't), there are multiple additional problems with this approach.

First, the Complaint does not actually allege these "contradictory facts" existed at the time of Defendants' statements. Plaintiff cites solely to paragraphs 71-75 of the Complaint (Opp. 9), which contain excerpts from SunPower's January 2022 announcement of the cracking issue and the analyst reports discussing that announcement. SunPower certainly did not "admit" that the cracking issue had been fully known and investigated and that it had decided to proactively replace all connectors and thus knew it would need to take the supplier-related charges back at the time of its statements in August and November of 2021. Rather, SunPower disclosed that "[t]hrough a product quality assessment, the company has identified a cracking issue that developed over time in certain factory installed connectors" and that SunPower had decided to "proactively replace these connectors" largely during 2022, which meant the Company had to take a $27 million supplier quality related charge in Q4 2021 and $4 million in Q1 2022. ¶¶71-75. The cited analyst reports, published immediately thereafter, merely echo what SunPower disclosed and then share some conjecture about how the issue may have been discovered. None of the reports allege that SunPower committed securities fraud or otherwise failed to share material information. *Id*.

The Opposition stresses language excerpted from an analyst report by Roth Capital Partners, which characterized SunPower's January 20, 2022 announcement. The full quote reads: "SPWR preannounced Q4'21 results to the downside and detailed the company's expectations for (1) charges of ~$31mn . . . related to the proactive replacement of third-party connectors experiencing a 'cracking issue' for nearly all C&I systems since 2019." ¶75. The Opposition misleadingly latches on to the "since 2019" language to imply that SunPower knew all of the information it disclosed on January 20, 2022 "since 2019." Of course, that is not what the Roth report itself states, nor does the SunPower press release it is paraphrasing say any such thing. The "since 2019" wording just describes the subset of connectors SunPower decided to "proactive[ly] replace[]."[1] Nowhere does the Complaint allege facts suggesting that the cracking issue had existed since 2019, or that anyone at SunPower had knowledge of the cracking issue since 2019 or that the Company had proactively decided to replace all the potentially affected connectors— and thus knew that it would have to incur millions of dollars in costs—since 2019.

Even if the Roth report could be read to imply what Plaintiff misleadingly suggests, the vague and unreliable source would render it insufficient to allege falsity. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1172 (C.D. Cal. 2007) (finding allegations based on a newspaper article did "little good" because they provided no specific facts "to corroborate the reliability of the report" and articles were credited "only to the extent that other factual allegations would be— if they are sufficiently particular and detailed to indicate their reliability" (citation omitted)); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) (same). The Opposition makes clear Plaintiff has nothing else to corroborate these insinuations;[2] to the

---

[1] Further undermining Plaintiff's insinuations, none of the other three analyst reports issued on January 20-21, 2022 and cited in the Complaint mention that there had been cracking since 2019, or that the Company knew about cracking since 2019. ¶¶72-75; Ex. 11 (Roth); Ex. 12 (Truist); Ex. 13 (Cowen); Ex. 14 (Credit Suisse).

[2] Plaintiff claims that the "financial analyst reports pled in the Complaint" are based in part on nonpublic information, but cites only paragraph 82, which quotes the October 11, 2022 Bank of America report, *not the Roth report*. Opp. 18. There is no allegation that any of the January 2022 reports were based on personal or inside knowledge and the reports themselves make clear they are just characterizing the Company's announcement.

contrary, the Complaint's allegations are self-contradictory.[3] Because this non-allegation is the sole basis for Plaintiff's falsity claims, the Complaint should be dismissed on this basis alone.

Second, even if Plaintiff had alleged particularized facts that something was known about the cracking issue at the time of the statements, the Opposition does not explain how that information contradicted Defendants' statements about SunPower's results and overall prospects or rendered them misleading. Mem. 18 (duty to disclose internal problem arises only if its omission would make some "other statement[] materially misleading") (citing *Twitter*, 29 F.4th at 620). The Opposition generally ignores the arguments made in Section I.3 of the Motion, which address Defendants' actual statements and show that nothing in the Complaint contradicts the information or opinions provided. Indeed, Plaintiff concedes that it fails to allege anything about the actual statements and the facts underlying them, such as facts related to SunPower's results and overall positioning, residential TAM, the top line or margin of the CIS business and/or debt levels.[4] Opp. 11-12. That SunPower made certain disclosures about revenue (Opp. 12 n.11) did not somehow trigger an obligation to make separate disclosures on other issues or topics, or even to disclose all facts on the subject at hand. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) (rejecting notion that "once a company chooses to disclose any . . . information [regarding a subject], it must disclose all material information regarding [the subject]").[5]

Finally, Plaintiff also misstates the law as to Defendants' opinion statements, claiming that "[t]o escape liability, Defendants must show the alleged statements are 'pure' opinion statements."

---

[3] For example, Plaintiff speculates at times that cracking was known "since 2019," Opp. 1, at times that it was discovered years later in due diligence related to the sale of the CIS business, ¶¶72-73, and at times that it was discovered just prior to the update to the safety manual, Opp. 17. The Court should not credit such self-contradictory allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[4] Plaintiff criticizes Defendants for misreading **Statement 8** by making reference to "residential TAM," Opp. 11, but this is simply the second half of the sentence. Plaintiff cannot plead a securities fraud claim by holding its thumb over half the sentence.

[5] For these reasons, Plaintiff is wrong that Defendants do not dispute that "cracking in connectors, or the risk of more widespread cracking or of consequent costs, was a fact that had materialized by the time of the challenged statements," Opp. 15, or that the challenged statements "were false and misleading when made," Opp. 10.

Opp. 11. That is not the Ninth Circuit standard, which requires allegations that (1) "'the speaker did not hold the belief she professed' and that the belief is objectively untrue," (2) a supporting fact supplied is untrue, or (3) defendants omitted "particular and material facts" "going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." Mem. 14 (citation omitted). Nowhere does the Opposition point to facts suggesting that SunPower either did not hold the beliefs professed, or supplied supporting facts that were untrue. Mem. 14-16. And as noted, the Complaint fails to allege that the Individual Defendants had any contradictory facts in their possession at the time, much less specific facts whose omission makes the opinion statements (about being "well positioned" to drive future growth with "solid results" and a "healthy balance sheet" and the business being "significantly better year on year") misleading.

### 4. Plaintiff Fails to Allege with Particularity that the Risk Factor Statements Were False When Made

The Opposition fares no better with respect to the challenged risk factors (**Statements 5-7, 9-11**), which warned of potential costs related to product defects and similar issues. Plaintiff claims they were false or misleading because they disguised risks that had knowingly materialized as mere uncertainties (Opp. 16-17), but the argument is again premised on the unfounded assertion that the cracking issue and related costs had already materialized by August 4, and November 4, 2021. Opp. 13-14. As discussed above, the Complaint fails to allege this.

Although Plaintiff attempts to gloss over the actual statements, the risk disclosures at issue specifically warned of "substantial expense," "significant" warranty and non-warranty costs, "negative[] impact" to its financial condition, "substantial" repair expenses, and the "loss of revenue," ¶¶11, 14, 44-46, meaning that Plaintiff must allege these costs and impacts had materialized by the time of the statements in order to show they were false, Mem. 17-18. The Complaint contains no allegation that SunPower knew it would have to incur any costs as a result of the cracking issue at any time prior to January 2022—that is fatal to these claims.

The cases cited in the Opposition only highlight what is missing here. In *Alphabet*, 1 F.4th at 703-04 (Opp. 14-15), the risk disclosure warned that concerns about the company's data and

privacy practices could damage the company's business and reputation and lead to regulatory scrutiny, when the company was already aware of a "Three-Year Bug" and other security vulnerabilities outlined in an internal "Privacy Bug Memo," which warned of "immediate regulatory interest." *Id*. at 695-96, 702-03.  In *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986 (9th Cir. 2008) (Opp. 16), the risk disclosure warned of "possible future changes in delivery schedules and cancellations of orders," but the complaint alleged through multiple CWs that the defendants had already received four large stop-work orders, one of which resulted in one of the company's facilities becoming a "ghost town," *id*. at 988 n.5.  In *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009) (Opp. 14), the court found that risk disclosures warning of possible product liability claims were misleading when the company was already facing lawsuits.  Ignoring Defendants' cited caselaw (Mem. 16-17),[6] Plaintiff quibbles with Defendants' arguments concerning the extent to which the risk at issue must have materialized, claiming that Plaintiff needs only show that "some" portion of the risk—and not any financial impact—need be a "near certainty" at the time of the relevant warning. Opp. 15-16.  Yet, that argument ignores the actual risk disclosures at issue, and in Plaintiff's own case, the Ninth Circuit found the risk disclosures actionable only because the complaint alleged the disclosed theoretical risks had ripened into "actual harm." *Alphabet*, 1 F.4th 687 at 703.  Plaintiff fails to allege any actual harm had arisen here.

Plaintiff's citation to *Reese v. Malone*, 747 F.3d 557, 573 (9th Cir. 2014) (Opp. 16-17), *overruled in part by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017), is also unavailing. By Plaintiff's own description, *Reese* did "not involv[e] risk factors filed on Form 10-Q," Opp. 16, but rather, involved specific statements by defendants as to "low manageable corrosion rates" in the face of internal documents showing

---

[6] The Opposition ignores *Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F.4th 123, 137-38 (1st Cir. 2021) and others, and singles out *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483 (6th Cir. 2015) for criticism, but Plaintiff confuses the two holdings in that case (Opp. 15). *Bondali* held risk factors to be categorically non-actionable, a position the Ninth Circuit has not taken, but it held in the alternative that the risk factors in the case were not misleading because the issues were not widespread and severe enough to result in financial loss.  620 F. App'x at 491.  That holding is consistent with current Ninth Circuit standards and all of the cases cited by Defendants.

1  "high" and "not manageable" corrosion which was "alarming" and led to two major Alaskan oil
2  spills, as to which BP pled guilty of violations of federal law.  The Court also found misleading
3  defendants' attempts to explain away a second oil spill after defendants were on notice that similar
4  corrosion conditions existed, as evidenced by later admissions, an internal board memo, and
5  intervention by the company's regulator.  747 F.3d at 564.  Plaintiff's attempt to analogize to the
6  situation here (where there were not even any reported safety incidents or degradation of
7  performance), is beyond a stretch, particularly where Defendants are not attempting to explain
8  away blatantly misleading statements about an already realized risk (in the form of an illegal oil
9  spill) as a "preliminary assessment."  Opp. 16.[7]

### B. The Complaint Fails to Allege a Strong Inference of Scienter

The Opposition glosses over the Complaint's fatal failure to allege any facts about the Individual Defendants' state of mind at the time of the challenged statements.

***Lack of CW Testimony or Contradictory Internal Documents:***  The Opposition does not dispute the Complaint's failure to allege a single CW, internal document, report, or meeting or other red flag corroborating Plaintiff's theory of fraud or indicating Defendants' knowledge of information contradicting their public statements.  Opp. 16.  Plaintiff claims that CWs and contradictory internal documents are not strictly required in order to allege scienter.  Opp. 18. While that may be true where a plaintiff otherwise sufficiently alleges corroborating facts or facts regarding defendants' state of mind, that is not the situation here.  Mem. 19-21.  Plaintiff's own cases prove the point.  Opp. 18.  The Opposition cites *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1159-60 (N.D. Cal. 2015), but the court there relied heavily on CW allegations in finding scienter.  *Id.* at 1162-63.[8]  Plaintiff also cites *Alphabet*, but the plaintiff there

---

[7] Plaintiff's suggestion that the safe harbor might apply if "Defendants warned of something not in their unique control," Opp. 17, ignores the fact that the cracking occurred in connectors provided to the Company *by a third party*, ¶¶22, 72-73.

[8] Plaintiff also cites *Hatamian* for the notion that it need only plead allegations showing that "facts contradicting the alleged false statements . . . 'persisted' during the relevant time period and thus were contemporaneous," Opp. 18-19.  *Hatamian*, however, says no such thing; rather, the court found that plaintiffs stated a claim with alleged facts, based on CW and expert testimony, showing that the ongoing yield issues (which defendants indicated had been resolved) would have been known "at the latest" by March 2011, *i.e.*, one month prior to defendants' statements.  And

1 had a key internal memorandum that high-level Google executives allegedly received and read, among other allegations. 1 F.4th at 696-97, 706-07.  In *Reese*, executives were in possession of a corrective action order from a principal regulator, and the defendant *admitted* it was aware of issues with its pipelines for purposes of a plea agreement.  747 F.3d at 565-66.  *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019), involved specific allegations that internal slide decks with relevant forecasts were distributed, reviewed, and discussed during calls with the CEO.

While the Opposition claims in conclusory form that the Complaint otherwise alleges that "facts were known or readily available to Defendants" which "contradict[ed] Defendants' statements or ma[de] them misleading at the time they were made," Opp. 19, the actual allegations do nothing of the sort.  The most Plaintiff can point to are allegations that Mr. Faricy said in May 2021 that he would be "diving deep into the residential, commercial, and industrial businesses," ¶8, (*i.e.*, all the businesses) and his awareness that SunPower was "considering strategic options" for CIS in October 2021,[9] Opp. 19.  But those allegations do not help Plaintiff because the Complaint fails to allege with particularity that any cracking issues were known at the time of the "deep dive" or that Mr. Faricy actually came into possession of any such information.[10] Allegations of general business reviews do not support scienter.  *See In re Eargo, Inc. Sec. Litig.*, – F. Supp. 3d –, 2023 WL 1997918, at *14 (N.D. Cal. Feb. 14, 2023) ("vague" allegations about "internal review" insufficient where plaintiff provided no details about what review showed).[11]

---

in Plaintiff's marquee case, *Forescout*, the court rejected similar "persistence" type allegations based on "vague statements that layoffs occurred in 'spring 2019,' 'summer 2019' or just '2019'" because they did not establish facts existed at the time of defendants' statements.  63 F.4th at 776.

[9] The Opposition claims that Defendants do not explain how the product assessment referenced in the Company's press release was "meaningfully different" from one conducted during due diligence, claiming "both" support Plaintiff's allegations, Opp. 20. But the Complaint never alleges that the product assessment and the due diligence process were one and the same or that a product assessment was part of due diligence at all.  ¶¶71-73.  Either way, it is Plaintiff's burden to plead particularized facts supporting their claim. Plaintiff fails to do so.

[10] The Opposition claims that Mr. Faricy had a "lead role" in the strategic process (Opp. 19 (citing ¶¶8, 52-56, 79)), but the cited paragraphs do not say that; this claim should be disregarded.

[11] That Plaintiff has not yet been allowed discovery (Opp. 19-20) is a red herring.  "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual

***Lack of Motive Allegations:*** Plaintiff does not dispute that the Complaint is devoid of a single allegation that Mr. Faricy or Mr. Sial made suspicious stock sales or otherwise stood to benefit from the alleged fraud. Mem. 21. The Opposition does not meaningfully contend with this problem and fails to discuss *Ronconi*, *Rigel*, or the relevant portion of *Tellabs*.

The Opposition newly speculates that Defendants were motivated by "[their] desire to complete the sale of the CIS business." Opp. 25. This is nonsensical: Defendants disclosed the cracking issue weeks ***before*** selling the CIS business negating any inference that they withheld the information in order to facilitate a sale. ¶¶71, 77. Moreover, the pursuit of "routine business objectives, without more" cannot support such an inference, *see Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002), and motives benefitting defendants in their corporate capacity are generally insufficient for scienter, as Plaintiff's own cases indicate. *See In re Apple Sec. Litig.*, No. 19-cv-02033-YGR, 2020 WL 6482014, at *13 (N.D. Cal. Nov. 4, 2020).

The Opposition further implies that Mr. Sial's departure from SunPower "shortly after the negative 2022 announcement" supports an inference that Defendants had a motive to commit fraud, but it does not explain how. Opp. 25. And Mr. Sial departed more than six months after the announcement, making his departure remote in time. Mem. 20 n.6. Where Plaintiff claims that a leadership change is indicative of scienter, Plaintiff must "plead facts refuting other reasonable assumptions" regarding the change. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, No. 12-cv-06039-WHO, 2013 WL 6441843, at *14 (N.D. Cal. Dec. 9, 2013); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1003 (9th Cir. 2009) (allegations must differentiate between the "suspicious" and the "benign"). Plaintiff fails to do so.

***Purported Changes to the Safety Manual***: The Opposition fails to rebut any of the arguments made about the safety manual—namely, that it is not contemporaneous with the challenged statements, and that the changes were not suggestive of scienter when viewed as a whole. Mem. 21-22. Plaintiff argues that it is implausible that nothing arose about the cracking

---

knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *SG Cowen Sec. Corp. v. U.S. Dist. Court*, 189 F.3d 909, 912 (9th Cir. 1999) (citation omitted).

issue until after November 2021 (Opp. 23), but that is both speculative and beside the point.[12]  The Complaint does not allege that Defendants knew of any serious or widespread cracking issue or the resulting decision to proactively replace all connectors and associated costs in August or November 2021, nor does it allege that Mr. Faricy or Mr. Sial were even aware of the revisions to the manual in December.  The Opposition does not dispute any of these points.

*Analyst Speculation*:  The Opposition makes brief reference to analyst conjecture that SunPower might have learned about the cracking issue at some unspecified point during a due diligence process and complains that Defendants are not allowed to dismiss these statements as speculation (Opp. 6, 20), ignoring it was the analysts themselves which admitted to speculating. Mem. 22; *see also* Ex. 12 (Truist) ("Other Disclosures") ("[i]nformation contained herein has been derived from sources believed to be reliable but is not guaranteed as to accuracy").  These reports thus cannot support a strong inference of scienter; Plaintiff does not argue to the contrary.[13] Similarly, despite Plaintiff's repetition of the "since 2019" language, the Roth report offers no facts about what anybody at SunPower knew about anything, much less that the Individual Defendants knew anything about the extent of the cracking issue and that the Company would need to pay millions of dollars as a result thereof at the time of their statements.  ¶75; Ex. 11 (Roth).  The inference Plaintiff seeks to draw from these public documents (*i.e.*, that SunPower knew all of this information in 2019 and hid it from the public for over two years and then for some unknown reason decided to disclose it as part of a preannouncement of guidance in 2022) is

---

[12] Plaintiff invokes the alleged "magnitude" of the fraud, Opp. 23 (citing *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004)), but that is a concept typically applied, as in *Oracle*, to determine whether an accounting violation was obvious enough to be considered intentional.  Regardless, the magnitude of the cracking issue only reinforces why SunPower needed time to investigate the extent of the issue, which caselaw and arguments in Section I.5 of the Motion Plaintiff largely ignores.  Opp. 17 n.15.  Plaintiff fails to allege that Defendants knew as of August or November 2021 that all connectors installed since 2019 would need to be replaced (and at what cost) and thus fails to plead a strong inference of scienter.

[13] Plaintiff cites *In re Zillow Grp., Inc. Sec. Litig.*, No. C17-1387-JCC, 2019 WL 1755293, at *20 (W.D. Wash. Apr. 19, 2019), for the notion that "detailed due diligence" prior to a merger supports an inference of scienter, Opp. 16, but the court there inferred knowledge of legal compliance issues based on much more, including that executives defended the legality of the program and stated they knew how it was "put together" and "structured" and were "monitor[ing] the CFPB and the things that they are saying and doing," 2019 WL 1755293. at *20.  And, unlike in *Zillow*, Plaintiff here does not allege the CIS diligence actually involved the cracking issue.

1  not plausible and is not supported by particularized facts, as is required under the PSLRA.

2  ***Core Operations:***   The "core operations" doctrine, famously an argument of last resort,
3  cannot save Plaintiff.  The Opposition invokes "three different version[s]" of the doctrine, but
4  concedes that only the second and third allow a plaintiff to independently satisfy the PSLRA.  Opp.
5  20-21.  Plaintiff also concedes that the third version is inapplicable here, Opp. 21, because it cannot
6  be deemed "absurd" to suggest that Mr. Faricy or Mr. Sial might have been unaware of the cracking
7  problem (or its full extent) at the time of the challenged statements.  Mem. 22-23.

8  Plaintiff claims the second version "remain[s] open to [it]," but its own caselaw confirms
9  what Defendants explained in the Motion, that allegations of actual access to the disputed
10 information are required.  Mem. 23; *Quality Sys.*, 865 F.3d at 1145 ("had access to and used
11 reports").  Speculation as to Defendants' hypothetical access is insufficient.  Mem. 23 (citing *Align*
12 *Tech.* and *Zucco*).  The Opposition glosses over this requirement.  Because the Complaint does not
13 allege *anything* to suggest that Mr. Faricy or Mr. Sial had "actual access" to *any* information
14 concerning the cracking problem, the second version is unavailable to Plaintiff.

15 Citing *Apple*, 2020 WL 6482014, at *9, Plaintiff invokes the "first version" of the doctrine,
16 where allegations are used "in any form along with other allegations," claiming "'a strong
17 inference that [Defendants] knew about the risk of such pressure from' cracking in connectors"
18 because "[t]he health of the commercial business was critical to SunPower's financial success."
19 Opp. 20 (citation omitted).  *Apple* actually demonstrates why core operations does not apply here.
20 Despite allegations that the CEO tracked the business in China, which accounted for Apple's third
21 largest market and highest growth market, with nearly 20% of revenue, as well as widespread news
22 coverage of economic decline in China and trade tensions with the US, the *Apple* court rejected a
23 core operations inference, holding that "none of these allegations, by themselves, raise a strong
24 inference that [he] knew that Apple experienced pressure in China."  2020 WL 6482014, at *9.
25 Rather, the court only found that plaintiff's allegations all together created a compelling inference,
26 particularly in light of the CEO's later admission that the company had troubling data at the time
27 of his statements, as well as allegations that Apple cut production mere days after his positive
28 statements.  Nothing close to this level of detailed facts is alleged here.

***Holistic Analysis:*** There is no compelling inference of fraud. Having nothing else, the Opposition relies on a "temporal proximity" argument, Opp. 21-24, claiming scienter can be inferred from the "close" proximity between the August and November 2021 statements and the announcement of the $27 million charge on January 20, 2022. Opp. 21. Plaintiff again ignores *Twitter*, which held that "temporal proximity alone does not satisfy the particularity requirements of Rule 9(b)," but can only "bolster" other well-pleaded allegations of scienter. 29 F.4th at 622; *see also Forescout*, 63 F.4th at 777-78 (same). Here, the statements are not particularly close in time to the alleged disclosure (almost 3-6 months after), and in *Twitter*, the court found similar arguments of temporal proximity (*i.e.*, that defendants must have known earlier of internal problems) unpersuasive when plaintiffs alleged false statements on July 26 and 31, 2019 and a disclosure of the "recently discovered" issue on August 6, 2019, a difference of only 1-2 weeks. 29 F.4th at 616-17, 621-22. Nor do the statements here reflect the kind of suspicious 180-degree reversal that would suggest scienter. The Opposition cites *Reese*, but the court there actually found a 3-6 month gap between a statement and later disclosure could *not* independently establish scienter, 747 F.3d at 575, and nothing in this Complaint alleges "long-term" information as in *Reese*, which involved more than a decade of historical data about corrosion in oil pipes. *Id*.

Plaintiff asks the Court to look past the lack of CWs, the lack of internal reports, the lack of red flags, the lack of suspicious stock sales, the lack of post-class-period admissions, and the lack of allegations concerning actual access to contradictory information, to find scienter based on fraud-by-hindsight and a few snippets from analyst reports. None of Plaintiff's cases support a finding of scienter on such scarce allegations. The far more plausible inference from the facts alleged here is that SunPower warned of the risks associated with defective products and, later, appropriately disclosed when those risks had materialized into a $27 million charge.

## CONCLUSION[14]

The Complaint should be dismissed in its entirety pursuant to the PSLRA and Rule 9(b).

---

[14] Plaintiff does not address Defendants' Rule 10b-5(a) or (c) arguments, Mem. 24, and therefore waives any scheme liability claim. *See Countrywide Home Loans*, 2010 WL 841669, at *6 n.2 (failure to address challenged claim in opposition brief is "abandonment"). Plaintiff's control liability claim fails for lack of a predicate. Mem. 24.

| | | |
|---|---|---|
| 1 | Dated: June 12, 2023 | Respectfully submitted, |
| 2 | | **WILSON SONSINI GOODRICH & ROSATI** |
| 3 | | Professional Corporation |
| 4 | | By: /s/ *Katherine L. Henderson* |
| 5 | | Katherine L. Henderson |
| 6 | | Attorneys for SunPower Corporation, Peter Faricy, and Manavendra S. Sial |