1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    PIOTR JASZCZYSZYN,                       Case No. 22-cv-00956-AMO

8                    Plaintiff,

9           v.                                **ORDER GRANTING DEFENDANTS'**
                                              **MOTION TO DISMISS**
10   SUNPOWER CORPORATION, et al.,
                                              Re: Dkt. No. 108, 119
11                   Defendants.

12

13          Before the Court is Defendants SunPower Corporation, Peter Faricy, and Manavendra S.

14   Sials' motion to dismiss the Third Amended Complaint ("TAC"). This order assumes familiarity

15   with the Court's order granting Defendants' motion to dismiss the First Amended Complaint

16   ("FAC"), including that order's recitation of the facts, the applicable legal standards, and the

17   arguments made by the parties. *See* ECF 85 ("Order"). Having read the parties' papers and

18   carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS**

19   the motion for the following reasons.

20   **I.      BACKGROUND**

21          On January 20, 2022, SunPower announced that it was taking a $27 million warranty

22   charge due to a "cracking issue that developed over time in certain factory-installed connectors

23   within third-party commercial equipment supplied to SunPower." TAC (ECF 101) ¶ 5. Relying

24   on this news, Plaintiff challenges certain of the company's risk factors and statements regarding its

25   commercial business as materially misleading for failure to disclose this information earlier.

26   Plaintiffs allege, for example, that Defendants "deceived investors throughout the Class Period in

27   a fraudulent scheme by concealing the existence and their knowledge of a product defect";

28   "concealed the cracking problem associated with . . . defective products during the Class Period";

"did not accrue for and/or disclose the Company's contingent loss for warranty expenses as a result of the defective connectors."  TAC ¶¶ 4, 22, & 123.

On July 17, 2024, the Court dismissed the FAC in its entirety.  The Court found that the FAC failed to show that any of the challenged statements were false or misleading when made; several statements were also found to be inactionable puffery and/or protected by the statutory safe harbor for forward-looking statements.  Order at 7-22.  The Court's reasoning centered on a particular deficiency: despite relying on an omissions theory, the FAC did not allege when Defendants learned of the cracking problem or its severity, when they made the proactive decision to replace the affected units, or when SunPower determined that it would need to take the $27 million charge.  *Id.* at 10, 12.  In dismissing the FAC, the Court found that Plaintiff fundamentally failed to plead "Defendants' knowledge of the defect – much less Defendants' understanding of how the defect would financially impact the company – at any time prior to the January 2022 announcement of the breadth of the cracking issue," and "fail[ed] to establish contemporaneous knowledge that the risks warned of had come to fruition."  *Id.* at 10.  The Court found no strong inference of scienter for similar reasons.  *Id.* at 18-19.

In the TAC, as in the FAC, Plaintiff again alleges that because defects existed in "nearly all" of the Company's commercial systems "since 2019" (TAC ¶¶ 15(a), 22, 50(a), 67(a), 75, 91), Defendants "must have learned" about the "pervasive problem" "in conducting due diligence" (TAC ¶¶ 22, 72-73) for a potential sale of the CIS division or from management's "focus" on " 'diving deep' into SunPower's residential and commercial business segments" (TAC ¶ 15).  Plaintiff repeats its challenges to SunPower's risk factor statements (TAC ¶ 53 (Statements 1-12)), and statements about its commercial business (TAC ¶¶ 68-69 (Statements 37-39)).  Plaintiff adds statements about warranty reserves, warranty accruals, EBITDA, and net income for the second quarter of 2021 ("2Q21") and the third quarter of 2021 ("3Q21") (TAC ¶¶ 55-61 (Statements 13-30)), and the status of internal control over financial reporting and disclosure controls in 2Q21 and 3Q21 (TAC ¶¶ 64-66 (Statements 31-36)).  Moreover, Plaintiff attempts to contextualize these allegations by cites to post-class period litigation.  TAC ¶¶ 13, 14.

1    **II.    DISCUSSION**

2    SunPower and the individual Defendants move to dismiss the TAC for failure to state a

3    claim.  The Court takes up the four groups of allegedly false statements in the order enumerated in

4    the TAC.  Because Plaintiff ultimately fails to allege "a material misrepresentation or omission by

5    the defendant" sufficient to support its claim for violation of Section 10(b) of the Securities

6    Exchange Act for the reasons stated below, the Court does not proceed to analyze the sufficiency

7    of Plaintiff's allegations in support of the remaining elements of the claim.  *See Matrixx*

8    *Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (citation omitted).[1]

9    **A.    Falsity of Risk Factors (Statements 1-12)**

10    In the TAC, Plaintiff challenges the same risk factors identified in the FAC (Statements 1-

11    12) concerning the risks associated with supplier failures, defects causing warranty costs, and

12    defective parts and replacement costs, and Plaintiff again asserts that these disclosures were false

13    or misleading by omission because they warned of risks that had already occurred.  TAC ¶¶ 53-54.

14    In dismissing the FAC, the Court made clear, "[f]or a statement to be false or misleading, it must

15    'directly contradict what the defendant knew at that time' or 'omit[] material information.' "

16    Order at 7 (quoting *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022)).

17    The Court identified the fundamental failure in Plaintiff's pleading was that it "at no point

18    allege[d] Defendants' knowledge of the defect – much less Defendants' understanding of how the

19    defect would financially impact the company – at any time prior to the January 2022

20    announcement of the breadth of the cracking issue," and that it "fail[ed] to establish

21    contemporaneous knowledge that the risks warned of had come to fruition."  Order at 10.  The

22    same problem with Plaintiff's risk disclosure allegations remains an issue in this round of

23    pleading.

24    The Ninth Circuit has found risk disclosures actionable only where the complaint alleged

25    the disclosed theoretical risks had ripened into "actual harm."  *In re Alphabet, Inc. Sec. Litig.*, 1

26

27    ───────────────

28    [1] Plaintiff conceded at the hearing that the Court need not proceed to analyze the remaining
elements of its securities fraud claim if the Court found a continued failure to allege fraud by
omission.

United States District Court
Northern District of California

F.4th 687, 703 (9th Cir. 2021) (finding complaint sufficiently pleaded falsity of risk statements where plaintiff averred company concealed known privacy bug and a "Privacy Bug Memo" outlined "immediate regulatory scrutiny" while public disclosures warned that such harms "could" result from security vulnerabilities).  Similarly, in the matter of *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934 (9th Cir. 2023), the Circuit found falsity adequately pleaded where plaintiffs alleged that Facebook was aware that third-party Cambridge Analytica had violated the website's data policies, yet the company continued to represent "the risk of third parties improperly accessing and using Facebook users' data as purely hypothetical."  *Id.* at 948-49.  In contrast, in *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023), the Ninth Circuit rejected a claim that a risk disclosure warning of potential customer loss was false where plaintiffs failed to allege facts showing the customer loss had already occurred at the time of the statement.  *See also Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621-23 (9th Cir. 2022) (rejecting challenge where complaint failed to allege that defendants knew of impacts from software bugs at time of challenged statements).

Here, the TAC contains no particularized allegations of Defendants' contemporaneous knowledge like those presented in *Facebook*, which included that Facebook had specific knowledge of the problematic Cambridge Analytica dataset, at least one conversation with Cambridge Analytica in which Cambridge Analytica's violation of the terms of use was discussed, and ongoing issues with getting Cambridge Analytica to confirm data deletion.  *Facebook*, 87 F.4th at 949.  Plaintiff here instead continues to rely on vague claims of defect discovery during due diligence.  TAC ¶¶ 23, 119-120.  The TAC thus fails for similar grounds to those identified in *Weston Family Partnership*, as Plaintiffs continue to fail to allege that Defendants knew of the product defect or its impacts at the time of the challenged statements.  *See id.*, 29 F.4th at 621-23.

Plaintiff attempts to resist this conclusion by relying on *Smilovits v. First Solar, Inc.*, 2012 WL 6574410 (D. Ariz. Dec. 17, 2012), to support of its assertions of known falsity.  Opp. at 8.  The *Smilovits* case involved allegations that defendants manipulated a "central" cost-per-watt ("CPW") metric and concealed a known manufacturing defect in the company's products.  The *Smilovits* court found falsity adequately pleaded based on particularized confidential witness

1    allegations, including (1) a whistleblower complaint, reported directly to a defendant, regarding "a

2    meeting where CPW manipulation was discussed"; (2) "pressure" from the same defendant

3    leading to artificial manipulation of another metric "in an attempt to increase the CPW";

4    (3) management instructing a confidential witness to "ignore" test results showing the company

5    had "misrepresented" the scope of the product defects; and (4) confidential witness testimony that

6    another defendant was presented with "problematic performance data" related to the defect.

7    *Smilovits*, 2012 WL 6574410, at *3-5.  The *Smilovits* court further found that the complaint

8    alleged with specificity that defendants first learned of the problem from customer complaints two

9    years before it was revealed to investors and that defendants made suspicious stock sales.  *Id.* at

10    *3, *5-6.

11          Here, Plaintiff presents no similar allegations in the TAC.  Plaintiff again fails to proffer

12    anything that supports Defendants' knowledge of the cracking defect in 2021 and thus the falsity

13    of their risk statements.  Plaintiff instead reiterates that because defects existed in "nearly all" of

14    the Company's commercial systems "since 2019" (TAC ¶¶ 15(a), 22, 50(a), 67(a), 75, 91),

15    Defendants "must have learned" about the "pervasive problem" "in conducting due diligence"

16    (TAC ¶¶ 22, 72-73) for a potential sale of the CIS segment.[2]  In so doing, the TAC still fails to

17    identify any particular information existing at the time of Defendants' August and November 2021

18    statements that contradicted the challenged statements.  The "corroboration of contemporaneous

19    knowledge" concerning cracking thus remains lacking.  Order at 7.

20          Plaintiff attempts to circumvent these crucial shortcomings by introducing allegations of

21    falsity premised on provisions of SunPower's master supply agreement with Tigo, a component

22    supplier, including that SunPower maintained rights to test and inspect the component products.

23    TAC ¶¶ 20, 54(a).  However, nothing in the TAC, including the *Tigo* Complaint incorporated by

24    reference therein, suggests that cracking defect appeared immediately upon installation.  *See*

25    _____

26    [2] To the extent Plaintiff relies again on the "since 2019" language as an admission the "cracking
     issue had existed since 2019, that anyone at SunPower had knowledge of the cracking issue since
27    2019, or that the Company had proactively decided to replace all the potentially affected
     connectors – and thus knew that it would have to incur millions in costs – since 2019," the Court
28    has already rejected that misreading of the cited documents.  TAC ¶¶ 3-4, 153-159; Order at 10-
     11.

Roberts Decl., Ex. 11 (ECF 108-14).  To the contrary, the cracking defects "were not known to SunPower" at the time of SunPower's manufacture (*id.*, ¶ 16), and the FAC and TAC both concede the problem developed "over time" (Order at 11, 17; TAC ¶¶ 25, 153).  Plaintiff fails to offer allegations about what inspection or testing Defendants conducted, that the cracking was actually discovered in that context, or even that Defendants themselves were made aware. Plaintiff also cites to unproven allegations from a shareholder derivative complaint, *Edelman v. TotalEnergies SE et al.*, C.A. No. 2023-0136-MTZ, (Del. Ch.) (Ex. 12).  The *Edelman* complaint provides no details about the due diligence process, much less basic facts like the dates of commencement and completion, scope of review, that it uncovered the cracking problem, when it uncovered the cracking problem, or who was made aware of the problem.  *See* Roberts Decl., Ex. 12.  Knowledge of cracking across the CIS segment cannot be inferred from allegations of general review or theoretical access to sources.  Order at 18-19 (general allegations of internal review insufficient to show knowledge); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (must allege "actual," as opposed to hypothetical, access to information to establish falsity of a statement).  This is insufficient to allege the falsity necessary to adequately plead securities fraud.  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech. Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) ("Because Plaintiff cannot identify any material facts omitted by Defendants, Plaintiff fails to plead falsity under an omissions theory of liability . . .").

Plaintiff asserts that knowledge of a "widespread defect" is established because TotalEnergies allegedly "valued CIS at $50-$100 million" in April 2021 and purchased it for approximately $150 million based on a financial model from September 2021, which incorporated 2Q21 financials.  Opp. at 2, 5; TAC ¶¶ 17,75.  Plaintiff advances that Defendants must have known about the product defect based on an artificially low valuation that did not change following disclosure of the cracking issue.  *Id.*  In so doing, Plaintiff postulates that the TAC can survive on "must have known" conjecture, relying on *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008), and *No. 84 Emp. Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920 (9th Cir. 2003).  Opp. at 1.  These two cases do not stand for the premise that "must have known" or "must have been aware of" inferences can support claims of

6

falsity – they instead permit an inference of scienter where a plaintiff first presents sufficient facts that the securities fraud defendants knew of the problems that contradicted their statements.  *See Applied Signal*, 527 F.3d at 987-88; *Am. W.*, 320 F.3d at 940-42.  Plaintiff here still has not alleged facts regarding Defendants' discovery of the cracking defect.

Ultimately, Plaintiff has not advanced past "would have" or "should have" suppositions.  Such conjecture is not enough to plead falsity with particularity.  Plaintiff's claims arising from the purported falsity of the risk factor statements accordingly fail.

### B.    Falsity of Warranty, EBITDA, or Net Income (Statements 13-30)

Plaintiff adds challenges to SunPower's statements that it maintained reserves for expected warranty expenses in 2Q21 and 3Q21 (TAC ¶ 55 (Statements 13-14)), as well as to numbers reported for warranty accruals and reserves (TAC  ¶¶ 56-57 (Statements 15-20)), EBITDA (TAC ¶¶ 58, 60 (Statements 21-22, 26-27)), and net income, (TAC ¶¶ 59, 61 (Statements 23-25, 28-30)), for 2Q21 and 3Q21.  Plaintiff contends that Statements 13-20 were false and misleading because SunPower later took additional warranty charges "to the tune of at least $32.3 million."  TAC ¶ 62(c).

As an initial matter, even if additional subsequent charges related to the cracking had been taken, that does not establish that previous estimates were inadequate at the time they were made.  *Rieckborn v. Jeffries LLC*, 81 F. Supp. 3d 902, 921 (N.D. Cal. 2015) (it is "not enough to merely plead that bad debt reserves turned out to be inadequate"); *In re Velti PLC Sec., Litig.*, No. 13-CV-03889-WHO, 2015 WL 5736589, at *36 (N.D. Cal. Oct. 1, 2015) (same); *Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815 (S.D. Cal. 2006) (same).  More damning, however, is Plaintiff's confirmation that Statements 13-30 "are actionable for the same reasons as [the] risk disclosure statements," the risk disclosure statements for which Plaintiff has not pleaded falsity as discussed above.  Opp. at 10.  Further, Plaintiff's failure to allege that Defendants made the proactive decision to replace all affected units, and thereby incur the associated costs at the time of the challenged statements, dooms Plaintiff's contention that "reserves did not account for losses that [SunPower] was likely to incur."  *Id.* at 12.  Plaintiff's challenges to Statements 13-30 fail to

United States District Court
Northern District of California

7

1  establish falsity because the risk disclosure statements upon which they rest are insufficient to

2  support them.

3       **C.    Falsity of Controls Statements (Statements 31-36)**

4       Plaintiff also newly challenges statements made by Defendants in August and November

5  2021 regarding the state of the company's internal control over financial reporting and disclosure

6  controls at the end of 2Q21 and 3Q21, as well as Faricy's and Sial's certification of the same

7  (Statements 31-36). The statements include standard certifications under the Sarbanes-Oxley Act

8  of 2002 ("SOX certifications") (TAC ¶ 64 (Statements 31-32)); "effective controls" statements

9  indicating that the company's internal controls were effective as of July 4, 2021, and October 3,

10  2021, (TAC ¶ 65 (Statements 33-34); *see also* TAC ¶127); and "controls and procedures"

11  statements stating that the company maintained reasonable internal controls in 2Q21 and 3Q21

12  (TAC ¶ 66 (Statements 35-36); *see also* TAC ¶¶ 128-129).

13       Two problems prevent these statements from supporting Plaintiffs' securities fraud claims.

14  First, Plaintiff does not tie these allegations to the purported failure to disclose a widespread

15  cracking defect that lies at the heart of this action. To the extent these allegations represent an

16  alternative theory of securities fraud distinct from Defendants' purported failure to disclose a

17  widespread cracking defect in the CIS segment, they are not a part of this case and exceed the

18  scope of amendment permitted by the Court. *See* Order at 22.

19       Second, even if the Court considered these allegations to support the falsity of Defendants'

20  statements, the TAC admits that the SOX certifications were signed "based on [Faricy's and

21  Sial's] knowledge" and "to the best of [their] knowledge and belief." TAC ¶¶ 64, 130. The

22  certifications were based on Faricy's and Sial's "evaluation" of internal controls and their

23  "conclusions" about the effectiveness of the disclosure controls and procedures at the time. TAC

24  ¶¶ 128, 130. Though Plaintiff contends these certifications were false, each SOX Certification

25  contains important language qualifying that the declarants only certified the financial reporting to

26  the extent of his or her knowledge on the date of the certification. Plaintiff accordingly must

27  allege facts explaining how or why the declarants knew the reporting of financial controls was

28  false at the time of the report in order to successfully plead falsity, facts absent from the TAC.

United States District Court
Northern District of California

Plaintiff argues in significant part that SunPower's 2023 restatements, which adjusted the company's financial reports to account for reporting errors in 2022, provide additional evidence of falsity. Opp. at 10. Not so. Plaintiff fails to draw any connection between the purported omissions of known product defects, on one hand, and allegations regarding accounting errors and weaknesses in disclosure controls, on the other hand. That Defendants issued these financial restatements does not bolster or even inform Plaintiff's allegations related to Defendants' knowledge of the cracking product defect.[3] Plaintiff fails to particularly allege a weakness that would render the SOX certifications false at the time they were made.

### D. Falsity of Statements About the Financial Condition of the Commercial Business (Statements 37-39)

The TAC again challenges three August 2021 statements in which SunPower stated that its 2Q21 results reflected "continued execution" (TAC ¶ 68 (Statement 37)), that it "remain[ed] on track" to achieve its 2021 financial outlook and "drive growth and profitability in 2022 and beyond" (TAC ¶ 68(b) (Statement 38)), and that "the business is significantly better year-on-year" (TAC ¶ 69 (Statement 39)).

The Court previously held Statements 37-39 to be inactionable puffery because they "express[ed] the positive outlook of corporate optimism that is unlikely to induce consumer reliance." Order at 12-14. These statements are the same in the TAC and remain inactionable puffery. The Court additionally found Statements 38-39 to be protected by the safe harbor for forward-looking statements. *Id.* at 14-17. Plaintiff argues that these statements constitute "mixed" statements of present facts and future projections. Opp. at 14-15. However, Plaintiff identifies no reason the Court should disturb its findings that Statements 37-39 are inactionable puffery and that Statements 38-39 are protected by the safe harbor. The Court declines to revisit its earlier determinations. Statements 37-39 do not support Plaintiffs' securities fraud claims.

---

[3] If Plaintiffs intend to rely on these restatements as an independent basis for securities fraud claims against Defendants, untethered from the purported cracking fraud, they violate the Order's limitation on the amended pleading. *See* Order at 22 ("No additional parties or claims may be added without leave of Court or stipulation of Defendants.").

United States District Court
Northern District of California

**E.      Leave to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires . . . and this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation and internal quotation marks omitted).  However, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend."  *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted).

The Court previously granted Plaintiff leave to amend, and Plaintiff has failed to address the fundamental problem identified by the Court – the lack of knowing falsity sufficient to support a claim for securities fraud.  Order at 12 ("Plaintiff's failure to allege falsity is fatal to its claims, and they must be dismissed on this basis.").  Thus, the Court finds that granting further leave to amend would prove futile and accordingly declines to permit another amended complaint.

**III.      CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss this securities fraud action for failure to state a claim.  Plaintiff conceded at the hearing that the action could not survive as to the TotalEnergies Defendants if the Court dismissed the claims as to the SunPower Defendants.  Therefore, the Court **DENIES as moot** Plaintiff's motion for extension of time to serve the TotalEnergies Defendants.  *See* ECF 123.

The Court **DISMISSES the action with prejudice**.


**IT IS SO ORDERED.**

Dated: February 14, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**